**Waymon Leon HOWARD, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 82–1461.**

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1983.

---

Jackson, Walker, Winstead, Cantwell & Miller, Anderson Wallace, Jr., Dallas, Tex., for plaintiff-appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard Farber, Patricia A. Willing, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before CLARK, Chief Judge, THORN-BERRY and RANDALL, Circuit Judges.

THORNBERRY, Circuit Judge:

## INTRODUCTION:

Appellant Waymon Leon Howard [Howard] appeals the district court's grant of summary judgment to the United States finding him personally liable for unpaid federal withholding taxes owed the Internal Revenue Service by his employer. Concluding that Howard was a "responsible person" who, without reasonable cause, willfully failed to collect and pay over these taxes, we affirm.

## FACTS:

Eden Marketing Corporation [Eden] was a Texas corporation engaged in the sale of skin care products to various control centers throughout the United States. It was incorporated on May 12, 1978, did business for a short while, and is currently without assets.

Appellant Howard was a director, minority shareholder, Treasurer, and Executive Vice-President of Eden from April 13, 1978 to September 12, 1978, when he resigned. Howard was responsible for Eden's day-to-day operations. Although Mr. Paul Jennings, CEO and majority shareholder, had final responsibility for hiring and firing, Howard hired and fired a number of employees with Jennings' approval during this period.

At the start of his tenure at Eden, Howard himself determined on several occasions which of Eden's bills were to be paid. In May of 1978 Howard caused $8,000 in back taxes to be paid the IRS. The IRS credited this money to the liability of one of Jennings' predecessor partnerships, with which Howard had no connection. Jennings became extremely upset when he learned of Howard's action, and ordered Howard not to pay the IRS any more money. Jennings subsequently relieved Howard of his duties with Eden for several weeks.

Upon being reinstated, Howard was instructed by Jennings not to pay any more bills without Jennings' approval. Although Jennings generally told Howard which creditors he should pay and when, Howard did issue small checks without Jennings' approval on a number of occasions.

From May 12, 1978 to July 6, 1978, Howard was the only authorized signatory on Eden's main checking account, and wrote most of the company's checks. From July 6, 1978 until September 7, 1978, Howard and Comptroller Richard Jameson, an employee working under Howard's supervision, were the only authorized signatories on this account. The bank required only one signature on checks drawn on this account.

Eden incurred employment tax liability for the second, third and fourth quarters of 1978 in the amount of $30,388.53. These taxes included federal income taxes with-

held from employees, the employee portion of FICA (Social Security) taxes withheld from Eden's employees, and the employer portion of FICA taxes. Howard was aware that taxes were due and owing to the IRS, at least in some amount, as early as June 1978. At some point during the summer of 1978, Howard contacted a senior IRS official who was also a deacon at his church and asked what he should do about Eden's unpaid taxes. Howard testified at his deposition that the official suggested that he write a letter to the IRS explaining the situation. Howard did not write the letter right away. He continued fulfilling his duties at Eden throughout the summer, writing at least 36 checks to creditors other than the IRS during that period. Howard officially resigned from Eden on September 12, 1978. In his letter of resignation, Howard advised Jennings of his concern over

1. The relevant portion of that letter is excerpted below:

 Paul, I am very concerned about the Federal payroll tax and the State and Federal unemployment tax that has not been paid. It has been my practice over the years to pay these taxes promptly as they are due. However, due to the financial condition that I found in Eden I could not pay these taxes in full. I did pay in $8,000.00 some time ago to I.R.S., in lieu of making a payroll. If no payment has been made recently, then I recall these taxes to be in excess of $30,000.00.

2. A copy of that letter is reproduced below:
 20 September 1978
 District Director
 Internal Revenue Service
 1100 Commerce Street
 Dallas, Texas 75202
 Gentlemen:
 I have recently been under the employ of Eden Marketing Corporation * as Executive Vice President and General Manager. I entered into their employment on April 13, 1978, and officially resigned on September 12, 1978. During that five month tenure I was requested on one occasion to step down as the general manager for a period of several weeks by Mr. Paul D. Jennings, the president and major stockholder. I did step down as general manager for a period of time and was later reinstated as general manager on another date.
 When I joined the Eden Marketing Corporation people in April, 1978, they were in grave financial condition. They owed heavy debts to vendors, were overdrawn at their bank, and were not making their federal payroll tax deposits.

Eden's unpaid taxes.[1] By letter dated September 20, 1978, Howard advised the local District Director of the IRS that Eden owed somewhat in excess of $30,000 in back taxes.[2] Howard did not mention in this letter either his conversation with the senior IRS official, or Jennings' instructions that he pay no further taxes to the IRS without Jennings' approval.

At the time Howard wrote this letter, Eden still had a substantial amount of money on deposit at its bank, as well as substantial assets in the form of inventories and accounts receivable. The IRS did not move to collect the taxes Eden owed until over two years later. By that point, Eden was without assets.

The IRS then issued assessments in the amount of the unpaid taxes under section 6672(a) of the Internal Revenue Code [3]

In May, 1978, I made a deposit of payroll tax in the amount of $8,000.00, in lieu of paying a payroll. Due to the heavy debts that I was faced with paying, and Eden not having any original capital, I was unable to pay any further moneys due to Internal Revenue Service. I believe that you will find that the amount still due to be something in excess of $30,000.00. I am enclosing a copy of my formal resignation along with this letter and request that this information be kept in the strictest of confidence.
Sincerely,
/s/ W. Leon Howard

W. Leon Howard * 3210 Belt Line Road, # 154
3239 Whispering Oak Dallas, Texas 75234
Dallas, Texas 75234 phone: 241-0761
home phone: 243-7636 Paul D. Jennings, President
office phone: 242-2138 home phone: 661-1082

WLH/mih
Enc. (1)

3. Section 6672(a) provides:
 SEC. 6672. FAILURE TO COLLECT AND PAY OVER TAX, OR ATTEMPT TO EVADE OR DEFEAT TAX.
 (a) GENERAL RULE—
 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed un-

against both Howard and Jennings. Howard was assessed $22,671.76, representing all of Eden's unpaid federal and FICA employees' withholding taxes for the second and third quarters of 1978. Howard paid a small portion of this assessment and instituted suit for a refund. The IRS counterclaimed for the unpaid balance of the assessment, and attempted to bring Jennings into the suit as an additional defendant on the counterclaim. Unfortunately, the IRS was unable to effect personal service on Jennings. The district court granted the IRS' motion for summary judgment based on the undisputed facts set forth above. The court determined that: (1) Howard was a person responsible for the collection and payment of taxes under sections 6671(b) and 6672(a); (2) Howard willfully failed to pay over the taxes owed; and (3) Howard lacked a saving "reasonable cause" for his willful failure to pay these taxes. Howard appeals that decision to this Court.

ANALYSIS:

■ Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering whether to grant a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. *Trevino v. Celanese Corp.,* 701 F.2d 397, 407 (5th Cir. 1983).

■ Sections 3102 and 3402 of the Internal Revenue Code require employers to withhold federal income tax and social security taxes from their employees' wages. The money withheld constitutes a special fund held in trust for the United States. I.R.C. § 7501 (1977). Each employee is credited by the Government with the taxes withheld from his wages, even if they are never remitted to the Government. *Mazo v. United States,* 591 F.2d 1151, 1153 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). When a corporate employer neglects to pay the required taxes, section 6672(a) authorizes the Government to assess the full amount of taxes due against the corporation's responsible officers in the form of a penalty. *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978); *Moore v. United States,* 465 F.2d 514, 517 (5th Cir.1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 688 (1973). This penalty is distinct from and in addition to the employer's liability for these taxes. *Newsome v. United States,* 431 F.2d 742, 745 (5th Cir.1970).

■ Before it may assess the penalty under section 6672(a) for employees' unpaid federal income and FICA taxes, the IRS must show that the person assessed was a person responsible for the payment of those taxes who, without reasonable cause, willfully failed to collect, account for or pay over the taxes to the IRS. *See* note 3, *supra.*

*Responsible Person*

■ The district court found that Howard was responsible for the collection and payment of taxes under I.R.C. sections 6671(b) and 6672(a). Howard argues that he was not a "responsible person" under these two statutes because: (1) he was not the majority shareholder in Eden; (2) CEO Paul Jennings, who had ultimate control over all payments by Eden to private creditors and to the IRS, ordered him not to pay any taxes; and (3) the IRS did not seek to impose the section 6672(a) penalty on Rick

---

der section 6653 for any offense to which this section is applicable.

I.R.C. § 6672(a) (West Supp.1982). The "person" referred to in section 6672(a) is defined as follows:

SEC. 6671. RULES FOR APPLICATION OF ASSESSABLE PENALTIES.

. . . . .

(b) *Person Defined*—The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

I.R.C. § 6671(b) (1977).

Jameson, one of Howard's subordinates who, like Howard, was authorized to write checks on Eden's main checking account.

Howard's arguments are without merit. The fact that he was a minority shareholder is itself legally insufficient to establish that he was not a "responsible person," and is relevant only to the extent that it supports his second argument, that he was merely following Paul Jennings' orders in refusing to pay the taxes owed.

Responsibility in this context is a matter of status, duty and authority. *Mazo,* 591 F.2d at 1156. Howard was a director, minority shareholder, Treasurer and Executive Vice-President of Eden during the second and third quarters of 1978. He ran Eden's day-to-day operations. He was the sole signatory on the corporation's main checking account for a substantial portion of that period, and shared check-signing authority with Rick Jameson for the remainder of the relevant period. During a prior quarter, it was he who directed that $8,000 in back taxes be paid the IRS. *See Brown v. United States,* 464 F.2d 590, 591 (5th Cir.1972) ("responsible person" was person successful in securing payment of withholding taxes during prior quarter), *cert. denied,* 410 U.S. 908, 93 S.Ct. 962, 35 L.Ed.2d 270 (1973). Howard's duties, prerogatives, and prior acts are more than sufficient to establish that he was a "responsible person" for the purpose of section 6672(a) liability. *Commonwealth National Bank of Dallas v. United States,* 665 F.2d 743, 755 (5th Cir.1982) (lending bank officer with power to see that corporate borrower's taxes were paid, and to make decisions as to disbursement of funds, was a "responsible person"); *Mazo,* 591 F.2d at 1155–56 (general manager in charge of corporation's day-to-day operations and possessing check-signing authority was a "responsible person"); *Hornsby v. IRS,* 588 F.2d 952, 953 (5th Cir.1979) (corporate officer with check-signing authority was a "responsible person"); *Neckles v. United States,* 579 F.2d 938, 940 (5th Cir.1978) (*de facto* corporate officer regarded by some as a "boss," who signed checks and had significant control over disbursement of corporate funds, was a "responsible person"); *Adams v. United States,* 504 F.2d 73, 75 (7th Cir.1974) ("responsible person" need not be a corporate officer, but only someone with significant control over the disbursement of funds); *Liddon v. United States,* 448 F.2d 509, 513 (5th Cir.1971) (50% shareholder and corporate agent with authority to sign checks was a "responsible person"), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *Monday v. United States,* 421 F.2d 1210, 1214–15 (9th Cir.1970) ("responsible person" status generally attaches to "high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursement of funds."), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970).

The fact that Jennings might well have fired Howard had he disobeyed Jennings' instructions and paid the taxes does not make Howard any less responsible for their payment. *See Brown,* 464 F.2d at 591 n. 1 (5th Cir.1972) ("responsible person" need not have final word on payment of bills and taxes). Howard had the status, duty and authority to pay the taxes owed, and would only have lost that authority after he had paid them. Authority to pay in this context means *effective power* to pay. That Howard had this authority is demonstrated by the fact that he did issue small checks without Jennings' approval on a number of occasions. *Commonwealth National Bank,* 665 F.2d at 752. Had Jennings fired Howard for paying the taxes, Howard would at least have fulfilled his legal obligations.[4] Faced with the possibility of leaving the frying pan with only minor burns, Howard chose instead to stay on in the vain hope of avoiding the fire. While we appreciate the difficulty of his position, we cannot condone his abdication of the responsibility imposed upon him by law. *See Moore,* 465 F.2d at

4. The fact that Howard was stripped of his duties for a period of several weeks does not absolve him of liability under section 6672(a), given that he was a "responsible person" for a substantial portion of the relevant quarters.

517 (corporate officers who merely followed their superior's instructions in issuing checks to creditors were nevertheless "responsible persons").

Finally, Howard seeks to escape liability by analogizing his situation to that of Jameson. Jameson shared check-signing authority with Howard. The IRS did not assess the 6672(a) penalty against Jameson. Howard argues that the IRS' failure to pursue Jameson can only be explained by the proposition that Jameson was not a "responsible person," because Jennings had the last word in determining which of Eden's bills and taxes should be paid. Howard infers from this that he is not a "responsible person" either.

It does not follow from the fact that the IRS failed to assess the penalty against Jameson that he was not a "responsible person." The IRS is not obligated to pursue every person with responsibility for paying taxes of this sort, and did not abuse its discretion in assessing the penalty against Howard, and not Jameson. *Hornsby,* 588 F.2d at 954. The fact that there may be other fiscally "responsible persons" does not relieve Howard of his duty to pay these taxes as a "responsible person." *Id.*[5]

*Willful Failure*

■ Howard argues that because he was obeying Jennings' orders in not paying the taxes, his action cannot be characterized as "willful." In *Mazo* we stated that:

> The issue of willfulness is necessarily directed to the state of the responsible person's mind, a subjective determination. This determination is usually factual, and *"if sufficiently controverted, would preclude the granting of a summary judgment* on penalty liability," *Teel v. United States* [529 F.2d 903, 905 (9th Cir.1976) ]. However, as the court held in *Teel, supra,* evidence that the responsible person had knowledge of payments to other creditors after he was aware of the failure to pay withholding tax is sufficient for summary judgment on the ques-

tion of willfulness. *See also Kalb v. United States* [505 F.2d 506, 511 (2d Cir. 1974) ], and our decision in *Moore v. United States* [465 F.2d 514, 516 (5th Cir. 1972) ], cert. denied [409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 688 (1973) ], sustaining the correctness of a charge to the jury that the taxpayer's conduct was willful as a matter of law.

*Mazo,* 591 F.2d at 1157. It is undisputed that Howard knew he had failed to pay the taxes in question. In May of 1978 he directed that $8,000 in taxes be paid. He later contacted a senior IRS official to determine what should be done about the unpaid taxes, and notified Jennings in his letter of resignation that these taxes remained unpaid. It is also undisputed that Howard had knowledge of payments to other creditors after he was aware of the failure to pay the taxes. Howard himself signed 36 checks made out to other creditors after he knew that Eden owed taxes to the IRS. We hold that under the rule set forth in *Mazo,* Howard's conduct was willful as a matter of law.

■ Howard nonetheless argues that in order to be willful, his failure to pay the taxes had to be voluntary. Since he was only following his superior's orders, he contends that his omission was involuntary, i.e. that he was not personally at fault for the failure to pay. In *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 36 L.Ed.2d 251 (1978), the Supreme Court stated that "[t]he fact that [section 6672] imposes a 'penalty' and is violated only by a 'willful failure' is itself strong evidence that it was not intended to impose liability without personal fault." *Id.* 98 S.Ct. at 1788. However, as we have already noted in our analysis of Howard's status as a "responsible person," Howard had a choice. He could have paid the taxes, accepted the consequences, and thus avoided the penalty. Neither his discomfort over not paying the taxes, nor his desire to see them paid, makes his failure to pay any the less willful.

---

5. We need not and do not decide whether Jameson was in fact a "responsible person" under sections 6672(a) and 6671(b).

In the context of 6672(a), "willful" means voluntary, conscious, or intentional, as opposed to accidental. *Garsky v. United States,* 600 F.2d 86, 91 (7th Cir.1979). An action or omission need not be motivated by bad intent to be willful. *Feist v. United States,* 607 F.2d 954, 961 & n. 8 (Ct.Cl.1979); *Mazo,* 591 F.2d at 1154; *Sorensen v. United States,* 521 F.2d 325, 328 & n. 3 (9th Cir. 1975). A considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness. *Feist,* 607 F.2d at 961; *Mazo,* 591 F.2d at 1157; *Brown v. United States,* 591 F.2d 1136, 1140 (5th Cir.1979); *Sorensen,* 521 F.2d at 328; *Brown,* 464 F.2d at 591; *Monday,* 421 F.2d at 1215.

*Reasonable Cause*

■ The failure to remit taxes under section 6672(a) is not willful if the taxpayer can produce a "reasonable cause" for this failure. *Newsome,* 431 F.2d at 747. The reasonable cause exception is quite limited in scope. *Id.* Howard has cited no cases holding that the existence of an order from a superior not to pay withholding taxes constitutes reasonable cause for failure to pay them, and we have found none.[6]

Howard further argues, however, that because he contacted a deacon in his church who was a senior official of the IRS, and was told to "write a letter" to the IRS explaining his problem, he had reasonable cause not to make the required payments. Howard's conversation with this official is only briefly adverted to in the record. The record does not disclose when this conversation took place, the identity of the official, or what was said except for the official's recommendation that Howard write the

IRS a letter. We do not believe that a recommendation by an IRS official that a person contact the appropriate IRS office and explain his problem to them constitutes reasonable cause for not paying taxes. We also note that Howard did not write the letter in question until after he had resigned from Eden. By that point, he had voluntarily relinquished his authority to pay the tax out of corporate funds. His liability was established, and there was little anyone could have done to help him. The record contains no indication that the IRS official to whom Howard spoke ever told him that he could escape liability by writing the IRS, or that he was not under any obligation to pay the taxes owed. We conclude that, as a matter of law, Howard lacked reasonable cause for his failure to collect and pay the taxes owed.

*Other Considerations*

■ Howard contends that he would not be in the position he is in today if the IRS had promptly sought to collect the taxes owed once he notified them that they had not been paid. This is beside the point. A corporate officer cannot neglect his corporation's fiscal obligations, resign his position, and then seek to shift those obligations to the IRS. *Slodov,* 98 S.Ct. at 1785. Howard's personal liability was independently established long before he notified the IRS of Eden's tax deficiency. *See Hornsby,* 588 F.2d at 954 (liability imposed by section 6672(a) is distinct from corporation's duty to pay withheld taxes); *Newsome,* 431 F.2d at 745. Their handling of this deficiency is legally irrelevant to the separate issue of his liability.

■ Howard also claims that because he resigned his position with Eden shortly before the end of the third quarter of 1978, he

---

6. The district court characterized Howard's argument that Jennings' control over disbursements constituted reasonable cause for Howard's failure to pay as one of "upward delegation," and rejected it by analogizing to the holding in *Mazo* that "mere delegation of responsibility to another does not constitute reasonable cause." *Mazo,* 591 F.2d at 1155. We are somewhat puzzled at this characterization, since authority is by definition normally delegated downward to subordinates. However, this novel concept was not necessary to the district court's holding that Howard lacked reasonable cause, and the court in rejecting Howard's argument properly stated the applicable rule, that "[o]ne who has the status, duty and authority within a corporate structure to pay over trust fund taxes due cannot rely on the instructions of another to violate his duty."

cannot be held personally liable for Eden's tax deficiency for that quarter.

Section 6672(a) imposes liability on any person "required to collect, truthfully account for, and pay over any tax...." Since he was no longer employed by Eden on the date that taxes for the third quarter were due, Howard claims that he was not a person responsible for their payment. We rejected this same argument in *Brown,* 591 F.2d at 1140. Relying on the Supreme Court's decision in *Slodov,* we said:

> In *Slodov,* the Court specifically stated that an officer or employee need not be responsible for the payment of withholding taxes at the end of the quarter in order to be a responsible person for that quarter; it noted that otherwise "the penalties easily could be evaded by changes in officials' responsibilities prior to the expiration of any quarter."

*Brown,* 591 F.2d at 1140 (citations omitted).[7] We see no reason to depart from our holding in *Brown. See also Kalb v. United States,* 505 F.2d 506, 509 (2d Cir.1974) ("responsible person" still liable under section 6672(a) even though company went bankrupt before the end of the first quarter), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975).

*Conclusion*

Finding no disputed issues of material fact, we hold that Howard was a person responsible for the collection and payment of taxes under sections 6672(a) and 6671(b) who, without reasonable cause, willfully failed to pay these taxes.

We cannot help feeling that it is Jennings who should pay these taxes. The district court described Jennings as "an even more responsible person" than Howard. However, Jennings is apparently no longer within reach of the long arm of the IRS. And section 6672(a) looks only to "responsible persons," not to "the most responsible person," for satisfaction. Although we recognize that our holding today may appear

harsh to some, we are bound to follow the law as interpreted by the Supreme Court and this Circuit. The judgment of the district court is accordingly

AFFIRMED.

---

7. In *Slodov,* the Supreme Court held that the word "and" in that portion of section 6672(a) imposing liability on any person "required to collect, truthfully account for, *and* pay over any tax ...'" was disjunctive. A person responsible for any of these three activities is a "responsible" person within the meaning of the statute. *Slodov,* 98 S.Ct. at 1785–87.