**Ralph O. JOHNSON, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

Civ. A. No. C 81–0467 L(A).

United States District Court,
W.D. Kentucky,
Louisville Division.

Feb. 3, 1984.

Judgment entered March 6, 1984.

Cecil Davenport, Louisville, Ky., for plaintiff.

Michael J. Salem, Tax Division, U.S. Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALLEN, Chief Judge.

This is an action tried before the Court without a jury in which plaintiff seeks to recover certain penalties and interest assessed as taxes and collected by the Internal Revenue Service, in connection with plaintiff's employment with an Indiana corporation by the name of N & T Security, Inc., hereinafter N & T. The United States has counterclaimed for additional penalties and interest, said to be due and owing to it, based upon the same factual circumstances from which plaintiff's claim arises.

Plaintiff Ralph O. Johnson came to N & T in the latter part of February 1978 at the behest of Edwin Neal, who then owned all of the stock of N & T. Plaintiff was told by Mr. Neal that he would be the President of the corporation, and that he would become a minority stockholder, owning approximately one-fourth of the shares of the corporation. He was also notified that a profit sharing plan was to be set up by the corporation, under the terms of which plaintiff would be entitled to 30% of the profits earned by the corporation. See Exhibit # 3 dated Sept. 18, 1978. The stock which was to be issued to plaintiff was never issued.

Although plaintiff testified that he never saw the bylaws of the corporation, he was designated by them as the corporation's chief executive officer. While he claims that he was not a member of the Board of Directors of the corporation, and while the corporation apparently held very few, if any, Board of Directors' meetings, plaintiff, in his letter of resignation, took the precaution of resigning as a Director as well as President of the corporation.

Plaintiff was given the authority to draw checks on the accounts of the corporation, both at the Louisville Trust Company and

at the Union Bank and Trust Company of New Albany. In addition, one other person, namely Mr. Neal, was authorized to draw checks on the Union Bank and Trust Company's account, and the individual on the Louisville Trust Company's account was a Ms. Wilcoxson.

On June 30, 1978, plaintiff and Edwin Neal were designated as the authorized persons to sign checks on behalf of N & T. On September 12, 1978, plaintiff and Neal filed their signature cards with the Louisville Trust Bank, authorizing plaintiff and Neal to draw checks on the N & T account.

Plaintiff signed some 166 checks on the two bank accounts, as to which he was one of the authorized signatories. No restriction upon the amount that he could withdraw was placed in the resolution which authorized him to be one of the signatories. The weight of the evidence was to the effect that plaintiff signed these checks when Neal was out of town. Neal testified that he was out of town approximately 65% of the time.

Plaintiff introduced the testimony of Neal and several other employees of N & T, and of Mr. Clay, who had been an attorney for Neal, in an effort to bolster his argument that he was merely a figurehead and had no authority other than that which Neal would grant him upon request. The evidence, however, shows that on April 24, 1978, plaintiff signed tax return Form 941 for N & T reflecting taxes owing to the United States of some $21,000. Plaintiff admitted signing Form 941 for the first quarter of 1978, but stated that he did so only on the request of a bookkeeper of the corporation by the name of Hawkins, who, prior to his signing it, told plaintiff that Mr. Neal had refused to sign the return.

On April 20, 1978, Rieke Meyer, who was designated as Secretary-Treasurer of the corporation, sent a letter to plaintiff and Neal notifying them of N & T's tax liability as of March 31, 1978. According to the letter, no provision for federal deposits had been made for the first quarter of 1978. Mr. Meyer then went on to state that the letter was to be considered as a letter of "notification of the above unpaid taxes, and penalties and interest that will be attached to said amount." The tax forms were then attached to the letter for taxes which were due April 30, 1978. He then goes on to note that there were $52,717.23 owing in taxes, of which $22,133.58 were Social Security employee and employer taxes, and $19,949.56 were Federal withholding taxes.

After receiving the letter of April 20th, plaintiff and Meyer went to see Neal and asked him if he were going to take steps to see to it that the taxes were paid. Neal advised them that he would attempt to borrow money from a firm in London, Kentucky and apparently attempted to do so but was unsuccessful.

The record reflects that the first checks drawn by plaintiff on the N & T account were issued on June 23, 1978, and that their total amount during the quarter which terminated on June 30th was $19,592.29. For the third quarter of 1978, the total amount drawn by plaintiff on the N & T account was $10,716.61. The total amount drawn in the fourth quarter was $6,175.61.

On November 29, 1978, after conferring with an attorney, plaintiff submitted his resignation as President of N & T and as an employee to take effect immediately. In that letter, he stated that he never knew what his duties and obligations were, and that he was never given the proper responsibility to pay corporate taxes, both federal and state withholding. He also stated that he was never given the proper responsibility to issue payments on other obligations owed by the corporation, and that his duties were relegated to that of an employee.

Title 26 U.S.C. § 6672(a) provides as follows:

(a) *General Rule*—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the

payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

Title 26 U.S.C. § 6671(b) provides as follows:

(b) *Person defined*—The term 'person', as used this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

In *Braden v. United States*, 318 F.Supp. 1189 (S.D.Ohio), aff'd, 442 F.2d 342 (6th Cir.1971), *cert. denied, sub nom. Bonistall v. Braden*, 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971), the United States Court of Appeals for the Sixth Circuit has stated that the question of whether a 100% penalty under 26 U.S.C. § 6671 has been properly asserted depends upon (1) whether the taxpayer had the authority over the corporation's decision to pay or not to pay the taxes which are at issue, and (2) whether he had the knowledge of the tax delinquency. See *Mueller v. Nixon*, 470 F.2d 1348, 1350 (6th Cir.1972), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1001 (1973), and *Braden v. United States, supra.*

In *Braden v. United States*, 318 F.Supp. at 1194, Chief Judge Weinman stated that among the various factors which should be considered in determining whether individuals were persons responsible for the payment of taxes withheld from the wages of employees were the following:

(1) The duties of the officer as outlined by the corporate by-laws.

(2) The ability of the individual to sign checks of the corporation.

(3) The identity of the officers, directors and shareholders of the corporation.

(4) The identity of the individuals who hired and fired employees.

(5) The identity of the individuals who were in control of the financial affairs of the corporation. (Citations omitted)

In addition, it was stated in *Braden, supra,* and is accepted law that more than one person may be the responsible person. *Id.* 343. It has also been held that the identity of the person who signed the employer's quarterly tax report is of significance. See *Datlof v. United States*, 252 F.Supp. 11, 32 (E.D.Pa.1966), aff'd, 370 F.2d 655 (3rd Cir.1966), *cert. denied*, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967).

While not relying exclusively upon Judge Weinman's analysis, it has already been noted that plaintiff had conferred upon him all the powers conferred upon the President of any corporation, had the ability to sign checks, was an officer and director of the corporation, and was a putative but not an actual stockholder. In addition it should be observed that plaintiff had decision-making powers as to those individuals who were hired for security purposes, but did not have such powers with regard to office personnel of N & T. No evidence was introduced to show that he actually fired any security personnel but he did make decisions with regard to their pay.

It is obvious that Neal was the individual who controlled the financial affairs of the corporation, but who, in essence, delegated some of his control to plaintiff. As counsel for the United States so ably put it, Neal, in essence, was for all practical purposes the President of the corporation but plaintiff was, in effect, a Vice President who took charge when Neal was not present, which was some 65% of the time. The Court finds that, under the tests set out by Judge Weinman and under the statute, plaintiff is a responsible person.

The next question is whether or not the plaintiff's conduct was willful under the interpretations which have been placed upon that term by the many courts which have considered this question. In *Braden v. United States, supra*, the Sixth Circuit has held that if the plaintiff has the power

and responsibility to pay accruing employment taxes of the corporation and fails to do so, at a time when he preferred other creditors over the United States, he is then "willful" in his failure to pay the taxes, despite any lack of malicious or wrongful purpose. *Id.* at 344.

A case which is somewhat analogous to the case at bar is that of *Howard v. United States,* 711 F.2d 729 (5th Cir.1983). There the appellant Howard was a director, minority stockholder and executive vice president of a corporation for a period of five months. He was responsible for the corporation's day-to-day operations. Although Paul Jennings, the majority stockholder and chief executive officer, had final responsibility for hiring and firing, Howard hired and fired a number of employees with Jennings' approval.

About a month after Howard came to the corporation, he caused $8,000 in back taxes to be paid to the IRS. The IRS credited the money to the liability of one of Jennings' predecessor partnerships. Jennings was upset by this action and ordered Howard not to pay any more money to IRS. He subsequently relieved Howard of his duties for several weeks, but then reinstated him. Howard was instructed upon reinstatement not to pay any more bills without Jennings' approval, but Howard did issue small checks without approval on a number of occasions.

For two months, Howard was the only authorized signatory on the company's main checking account and wrote most of its checks. The next two months, he and a comptroller who worked under him were the only authorized signatories. The bank required only one signature.

In June 1978, two months after Howard came to the corporation, he became aware that taxes were due and owing to IRS. Despite this knowledge, Howard continued his duties at the corporation throughout the summer, but officially resigned on September 12, 1978, and in his letter of resignation advised Jennings of his concern over the unpaid taxes.

Although the corporation had substantial assets at the time Howard resigned, IRS took no steps to collect the taxes until more than two years later. Both Howard and Jennings were assessed $22,671.76 representing all of the corporation's unpaid federal and FICA employees' withholding taxes for the second and third quarters of 1978. Unfortunately service of summons could not be had on Jennings, whom the IRS attempted to make an additional defendant, and the district court granted IRS' motion for summary judgment against Howard. That judgment was affirmed by the Court of Appeals.

In affirming the district court's decision, the appellate court rejected Howard's argument that he was not a responsible person because Jennings, who had ultimate control over all payments by the corporation, ordered him not to pay any taxes. The court pointed out that, although Jennings might have fired Howard had he disobeyed Jennings' instructions and paid the taxes, Howard had the status, duty and authority to pay the taxes, and he only lost that authority after he had paid them. *Id.* at 734. The court pointed out that the responsible person need not have the final word on the payment of bills and taxes.

*Howard, supra,* is also persuasive on the question of "willfulness," pointing out that where a responsible person has knowledge of payments to other creditors, after he was aware of the failure to pay withholding taxes, that fact alone constitutes grounds sufficient for summary judgment on the question of willfulness.

Here plaintiff was aware of the failure to pay the taxes for the first quarter of 1978 as early as April 20, 1978. Although he was assured by Neal that the taxes would be paid, they in fact were not paid and plaintiff did not take steps to assure himself that they had been paid. As President, he certainly had access to all of the corporate records to determine whether, in fact, the taxes had been paid. It is true that plaintiff did not definitely know that the taxes had not been paid until September 27, 1978, but he should have been aware of the

failure to pay in his capacity as President of the corporation.

While we are of the opinion that Circuit Judge Edwards accurately described 26 U.S.C. § 6672 as a harsh law in the case of *Braden v. United States, supra,* and while we also share the opinion expressed by the Fifth Circuit in *Howard v. United States, supra,* that it is really Mr. Neal who should pay the taxes, we must concur in the reasoning in *Howard* that § 6672(a) looks only to responsible persons, not to *the* most responsible person. See 711 F.2d at 737.

For the reasons set out above, judgment should be entered in favor of the United States. Counsel for the United States should tender to the Court, with copies to the plaintiff, judgment in accordance with these findings of fact, conclusions of law and memorandum opinion.

## JUDGMENT

The Court having considered the evidence and the arguments of counsel, and having entered its findings of fact and conclusions of law herein, it is in conformity therewith:

ORDERED that the United States, defendant and counterclaimant herein, have judgment against plaintiff, Ralph O. Johnson, for the principal sum of thirty thousand, four hundred, fifty-one and $^{60}/_{100}$ dollars ($30,451.60), plus interest to the date of entry of judgment in an amount of $18,946.68, with interest accruing after entry of judgment at the rate according to law.