**Carl LATIMER, Plaintiff,**

v.

**UNITED STATES of America, Defendant and Counterplaintiff,**

v.

**Frederick VAN METER, Counterdefendant.**

No. 82C5994.

United States District Court, N.D.Illinois, E.D.

Aug. 29, 1984.

Arthur N. Nasser, Chicago, Ill., for Latimer and Van Meter.

Dan K. Webb, U.S. Atty., Michael S. O'Connell, Asst. U.S. Atty., Chicago, Ill., James K. Wilkens, Robert W. Kern, Dept. of Justice, Tax Div., Washington, D.C., for U.S.A.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Carl Latimer ("Latimer") originally sued the United States under 26 U.S.C. § 7422 ("Section 7422"[1]) for refund of withholding taxes assessed against, and paid by, him. As is typical in these cases,[2] the United States counterclaimed against Latimer and Frederick Van Meter ("Van Meter") for taxes assessed under Section 6672.

Now the United States has moved under Fed.R.Civ.P. ("Rule") 56 for summary judgment against each individual. For the reasons set forth in this memorandum opinion and order, its motion is granted.

### Facts[3]

During the tax periods in question[4] Latimer was President and Executive Director, and Van Meter was Secretary, of the Coalition for United Community Action ("Coalition") (Latimer Dep. 5–6; Van Meter Dep. 5). Coalition received its funds from several agencies (ultimately deriving their funds from the federal government) for use in hiring disadvantaged minority youth ("trainees") and purchasing abandoned buildings. Coalition then put the trainees to work rehabilitating the abandoned buildings (Latimer Dep. 6–7). Coalition also used its funds to maintain an office space and staff.

To receive a funding allotment, Coalition submitted a proposed budget to each funding agency, which then approved a grant to Coalition for that fiscal year (Latimer Dep. 7–10). Coalition's budgets included amounts necessary to pay its office staff payroll, including amounts necessary to pay the withheld federal income and social security ("FICA") taxes for that staff. As for the trainees, however, each budget requested only an amount necessary to cover net payroll—the wages actually paid out to trainees—without any provision for federal income taxes or FICA taxes withheld on their behalf (Latimer Dep. 20–21).

Once a funding agency had approved a grant to Coalition, the actual draw down of funds required Coalition to submit vouchers to the agency detailing the expense. Each funding agency would audit the voucher and the later payments by Coalition to make sure monies were being spent in accordance with the budget approved by the agency (Latimer Dep. 23–27).

Latimer testified his job as Executive Director was to oversee everything, but he mainly involved himself with making sure the work with the trainees went smoothly (Latimer Dep. 26–27). Van Meter was responsible for keeping up on all corporate matters (Van Meter Dep. 6). Although Latimer kept physical custody of the Coalition's checkbooks, both Latimer and Van Meter were required to sign all Coalition checks (Latimer Dep. 29). Either Latimer or Van Meter could sign tax returns on Coalition's behalf (Latimer Dep. 12). Both Latimer and Van Meter participated in and were responsible for working on the budgets submitted to the funding agencies (Latimer Dep. 17–18). Either had the authority to submit vouchers to the funding agencies (Latimer Dep. 27).

Sometime in July 1978 Coalition employed a new accountant, who suggested

1. All references to sections of the Internal Revenue· Code (Title 26) will simply take the form "Section—."

2. Because District Court jurisdiction extends only to suits for refund of taxes (tax deficiency actions by the United States go to the Tax Court), the usual practice for an individual charged by the Internal Revenue Service with failure to turn over employees' withheld taxes is to pay a fraction of the alleged liability. Invariably the United States counterclaims for the entire unpaid portion (and if another individual is assertedly involved in the same withholding,

joins that individual as well). Here the total amount in issue is over $74,000 as to each of Latimer and Van Meter, and the portions they respectively paid were some $800 and $300.

3. As always on a motion for summary judgment, all reasonable inferences from the established facts are drawn in favor of the non-movants—here Latimer and Van Meter. *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir. 1984).

4. At issue are the quarter ended September 30, 1977 and all four quarters of 1978.

Coalition should not be responsible for paying FICA taxes because not-for-profit charitable organizations are exempt from such taxes (Latimer Dep. 32–33). That accountant recommended communicating with an IRS agent to ask that the FICA assessments be abated (Latimer Dep. 34). Coalition did request an abatement, but its request was denied.[5] Thus wholly apart from the level or extent of their prior knowledge, at least as of July 1978 both Latimer and Van Meter specifically knew the withheld taxes had not been paid over to the United States (Latimer Dep. 32; Van Meter Dep. 7–8).

In March 1981 the United States' Internal Revenue Service ("IRS") assessed each of Latimer and Van Meter $74,011.97[6] under Section 6672 for failure to pay over income and FICA taxes withheld from employees' salaries. Latimer paid $798.04 and filed a claim for refund with the IRS, which was denied.

### Section 6672 Liability

■ Employers are required to withhold FICA taxes and federal income taxes from their employees' wages (Sections 3102 and 3402). Those amounts are then held in trust for the benefit of the United States (Section 7501(a)). If an employer fails to collect, account for or pay over such trust funds to the United States, Section 6672 allows the IRS to assess a 100% penalty against those responsible for such failure. That penalty is separate from and in addition to the employer's liability for the tax due and owing. *Howard v. United States*, 711 F.2d 729, 733 (5th Cir.1983).

Section 6672(a) provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

"Person" is defined to include (Section 6671(b)):

an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

Thus a Section 6672 penalty can be assessed against any person who, though under a duty to collect, account for or pay over the withheld taxes (in common parlance the "responsible person"), willfully fails to do so. *Slodov v. United States*, 436 U.S. 238, 245–50, 98 S.Ct. 1778, 1784–86, 56 L.Ed.2d 251 (1978).[7]

Latimer and Van Meter launch a multiple attack to resist the assessed penalties, claiming:

1. They are not responsible persons, because they performed solely ministerial functions in distributing funds provided by Coalition's funding agencies.

2. They did not willfully fail to collect or pay the taxes, because:

(a) Coalition's funding contracts with the funding agencies left Latimer

---

5. Though the parties do not touch on the point, there is of course a meaningful distinction between (1) withholding of income taxes—amounts for which the employee is always concededly liable, but the employer acts as a collecting agent for the government, holding the amounts as trust funds—and (2) FICA liability, which may not exist at all as to a not-for-profit charitable corporation because its employees are not covered by social security.

6. That was the total amount of Coalition's claimed liability. Assessment of the individuals was on a joint and several basis.

7. Section 6672 is phrased partly in the conjunctive. Nonetheless *Slodov* (*id.* at 250, 98 S.Ct. at 1786) held it is to be interpreted as wholly disjunctive. Consequently if a responsible person willfully failed to do any *one* of the three listed acts—collect, account for or pay over the taxes—he or she is liable for the penalty.

and Van Meter with no discretion as to which creditors received money.

(b) They had "reasonable cause" for not paying the taxes.

Each argument will be addressed in turn.

### 1. "Responsible Person"

*Adams v. United States*, 504 F.2d 73, 75–76 (7th Cir.1974) (citations omitted) summarized the "responsible person" concept this way:

> The "person" who is responsible for the payment of corporate taxes within the meaning of § 6672 is that individual who has the final word as to what bills should or should not be paid, and when.... In this context, the word "final" means significant rather than exclusive control over the disbursal of funds.... Moreover, although the liability for failure to collect, account for, and pay over withheld taxes usually attaches to those high corporate officials who have the power and responsibility within the corporate structure for seeing that taxes withheld from various sources are remitted to the government,... the party subject to the penalty for the corporation's failure to pay the taxes due is not always or necessarily an official of the delinquent corporation.... The fact of the matter is that the responsibility for nonpayment of the tax includes all those so connected with the business as to be responsible for the performance of the act in respect of which the violation occurs.

*Haffa v. United States*, 516 F.2d 931, 936 (7th Cir.1975) has put the matter more simply:

> The key to liability under section 6672 is control of finances within the employer corporation: the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to its withholding tax obligations.

■ Here Latimer's and Van Meter's own depositions show they were in sole charge of submitting the budgets to the funding agencies, submitting vouchers for payment and paying the bills from funds provided. Clearly they could have provided in the budgets for amounts necessary to pay FICA and income taxes withheld from employees.

Moreover they had control over which creditors actually were paid with the funds provided. *Howard*, 711 F.2d at 734–35 demonstrates a fortiori that the funding agencies' audit of fund expenditures (even were it assumed such an audit was tantamount to an order) was not enough to relieve the taxpayers from their duty to collect and pay the taxes. In *Howard* the person in charge of paying bills was held a Section 6672 "responsible person" despite orders from his superior to pay money to other creditors rather than satisfying the tax obligations. And that was so even if paying the taxes meant he violated his employment contract, creating a risk of being fired. Here the fact Latimer and Van Meter may arguably have breached their funding contracts with the funding agencies by paying the taxes [8] did not relieve them of responsibility for payment of those taxes.

Latimer's and Van Meter's argument in this respect is no more than makeweight. Both are responsible persons under Section 6672.

### 2. "Willful" Failure

In the withholding tax context our Court of Appeals has consistently defined "willfulness" in these terms:

> a voluntary, conscious or intentional—as opposed to accidental—[decision] not to

---

**8.** Again the bootstrap nature of this contention must be noted. Latimer and Van Meter controlled the structuring of Coalition's funding requests. It would be bizarre to contend the funding agencies (using federal government funds) would have rejected a budget because it included—as Latimer and Van Meter were free to do and should have done—employees' in-

come taxes and FICA. And even if it were assumed (probably accurately) that funds available to Coalition from the funding agencies were limited, the only possible consequence of Latimer's or Van Meter's including such a clear legal liability in the budget request would have been approval of a smaller scope rehabilitation project.

remit funds properly withheld to the Government..

*Garsky v. United States,* 600 F.2d 86, 91 (7th Cir.1979), quoting *Monday v. United States,* 421 F.2d 1210, 1216 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). No bad or evil purpose need be proved, as the case law in *criminal* tax prosecutions has often indicated (though even in that respect our Court of Appeals has tempered the required showing; see *United States v. Koliboski,* 732 F.2d 1328, 1331 (7th Cir.1984); *United States v. Moore,* 627 F.2d 830, 833 (7th Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981)).

Latimer and Van Meter first contend Coalition's funding contracts allowed them no discretion in the payment of funds to creditors, rendering any failure to pay taxes non-willful. That argument is without merit.

*Brown v. United States,* 591 F.2d 1136, 1141–42 (5th Cir.1979) is instructive on that score. *Brown* rejected a corporate officer's assertion of non-willfulness based on the corporation's undercapitalization and the resulting restriction on funds. As the court sensibly pointed out (in language strikingly applicable to this case), the undercapitalization itself was willful. Here both Latimer and Van Meter prepared Coalition's budgets for submission to the funding agencies and never requested adequate monies for the trainees' withholding taxes, *even though* they reported such taxes to the IRS as having been withheld. Their failure to request adequate monies not only bore on their responsibility (see n. 8) but was itself a willful act.

But a finding of willfulness is not dependent on the willful undercapitalization of Coalition. At least by mid-1978 both Latimer and Van Meter knew withheld taxes had not in fact been paid over to the government. Since that time Coalition had funds that could have been used to pay the taxes (United States Ex. 12). Latimer's and Van Meter's failure to pay the unpaid taxes with those available funds is willful as a matter of law. *Howard,* 711 F.2d at

735 (holding the individual's contract-breach defense did not negate willfulness any more than it did his responsible-person status); see also *Garsky,* 600 F.2d at 91.

Latimer and Van Meter next urge their non-payment of taxes was not willful because they had a "reasonable cause" for not paying such taxes. Our Court of Appeals appears to have put that defense to rest ten years ago in *Monday,* 421 F.2d at 1216. See discussion in *Harrington v. United States,* 504 F.2d 1306, 1315–16 (1st Cir.1974).

Even on the assumption a "quite-limited-in-scope" exception does exist in some quarters (see *Howard,* 711 F.2d at 736), the reasons Latimer and Van Meter advance as "reasonable cause" are not persuasive. As they would have it:

1. They unwittingly waived Coalition's exemption from FICA taxes by paying such taxes for three consecutive quarters (Section 3121(k)(4), repealed P.L. 98–21, Title I, § 102(b)(2), Apr. 20, 1983). Hence the IRS should have allowed Coalition's request to abate the tax assessment, and Latimer and Van Meter had reasonable cause for not paying it.

2. They relied on an IRS agent's advice to file a request for abatement of the assessment due to the FICA tax exemption. That gave them reasonable cause for waiting and not paying the taxes.

That first argument was the crux of the allegations in Latimer's complaint here. Hornbook law teaches the taxpayer has the burden of proving the IRS assessment of taxes is incorrect. See, e.g., *Griffin v. United States,* 588 F.2d 521, 530 (5th Cir. 1979). Yet Latimer and Van Meter have presented no facts at all that would give rise to even an inference the IRS was wrong in its assessment, nor have they cited any legal authority to invalidate Coalition's waiver of the exemption. In short they have not even attempted to meet their burden on this argument.

■ As for their second assertion, Latimer and Van Meter are held to knowledge

of the law and cannot rely on a government agent's representation of what the law is. *Heckler v. Community Health Services of Crawford County, Inc.,* — U.S. —, 104 S.Ct. 2218, 2225–26, 81 L.Ed.2d 42 (1984). Claimed reliance on an IRS agent's advice to explain the problem to the IRS is not sufficient "reasonable cause" for not paying the taxes then due and owing. See *Howard,* 711 F.2d at 736.

In sum (1) "reasonable cause" is at most a limited defense and (2) in any case Latimer and Van Meter have not shown it existed here. This second level of their overall defense is equally flawed.

### Conclusion

There is no genuine dispute as to any material fact,[9] and the United States is entitled to a joint and several judgment[10] on its counterclaims against each of Latimer and Van Meter (but, of course, to only one satisfaction of judgment). Judgment is of course also entered for the United States on Latimer's Complaint. If the United States wishes to tender a draft judgment order as to all the claims, it should do so immediately.

---

**9.** Neither Latimer nor Van Meter has contested the assessment amounts.

**10.** *Sinder v. United States,* 655 F.2d 729, 732 (6th Cir.1981) (per curiam); *Brown,* 591 F.2d at 1142.