Karen Kingman **KENAGY**, Appellant,

v.

**UNITED STATES of America**, Appellee.

No. 90–2620.

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1991.

Decided Aug. 6, 1991.

Ronald R. Holliger, argued, for appellant; Robert R. McQuain, Ronald R. Holliger and Dennis A. Boman, Kansas City, Mo., on the brief.

Elizabeth K. Wickstrom, argued, for appellee; Shirley D. Peterson, Gary R. Allen, Charles E. Brookhart and Elizabeth K. Wickstrom, Washington, D.C., on the brief.

Before BOWMAN, Circuit Judge, HENLEY and FRIEDMAN,* Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

Appellant-plaintiff, Karen Kingman Kenagy,[1] the former office secretary/manager of a small carpet cleaning business, All Pro Carpet Cleaning, Inc. (All Pro), was assessed a responsible person penalty pursuant to 26 U.S.C. § 6672 (1988) (the Internal Revenue Code, hereinafter the "I.R.C." or the "code"). The penalty assessment of $42,859.35[2] was based on unpaid payroll taxes of All Pro relating to the second, third and fourth quarters of 1985. Appellant protested the assessment but was denied relief in writing by the Internal Revenue Service Office of Appeals on April 22, 1988. Appellant paid a portion of the penalty due and filed a claim for refund that was denied November 23, 1988. Appellant then filed suit for a refund in federal district court on December 9, 1988, and the government counterclaimed for the balance of the penalty due.

The district court ordered non-binding arbitration before a three-person panel, and appellant prevailed on her claim for refund. The panel decided unanimously that appellant was not a responsible person during the second and third quarters and reached the same decision, by a vote of two to one, for the fourth quarter. The government requested a trial *de novo* only as to the third and fourth quarter decisions. At the close of trial the jury returned a verdict in favor of the appellant, concluding she was not a responsible person during the third and fourth quarters, thereby denying the government's counterclaim.

Appellant made a motion for an award of administrative and litigation fees and costs pursuant to code § 7430 in the amount of $26,835.37. After considering party briefs, trial testimony and exhibits, the district court ruled that while appellant had substantially prevailed, exhausted all administrative remedies, and met the procedural pre-requisites for a fee award, she had failed to prove the government's position was not substantially justified. *See* I.R.C. § 7430(c)(2)(A)(i)-(ii). She appeals the ruling of the district court. We affirm in part and reverse in part.

FACTUAL BACKGROUND

All Pro was a small carpet cleaning firm with two principal operating divisions, cleaning services and telemarketing. The sole and dominant corporate decision maker, at least until August 5, 1985, was the part-owner and president, Mike Payne. He hired appellant, a high school graduate, on approximately April 10, 1985, to be the office secretary at a salary of $300.00 per

---

* DANIEL M. FRIEDMAN, United States Court of Appeals for the Federal Circuit, sitting by designation.

1. During the early stages of this case, appellant's name was Karen Kingman. By the time this appeal was filed, Ms. Kingman had married Michael Kenagy who is mentioned by name in this opinion. To avoid confusion, Mrs. Kenagy will be referred to as the appellant.

2. The assessment, by quarter, was as follows:

| | |
|---|---|
| Second Quarter | $ 9,705.82 |
| Third Quarter | 16,754.76 |
| Fourth Quarter | 16,398.77 |
| Total | $42,859.35 |

week. He had her added to the corporate checking account as a second signatory in addition to himself, but he maintained sole control over check writing authorization. The evidence presented at trial indicated that Payne had previously made and was responsible for making federal tax payments.

The record reflects that appellant developed office forms for the telemarketers and drivers. She also developed time sheets used in conjunction with employee wage rate information to compute gross payroll. She reported this information to the corporate secretary/treasurer and outside accountant, Littge. Littge, a former I.R.S. agent, was the principal in the firm Littge & Associates. He officed separately from All Pro. Littge maintained a client payroll account, prepared and signed All Pro's monthly payroll checks, prepared related reports, compiled the corporate financial statements, and prepared corporate tax filings. Littge alone signed corporate resolutions dated April 10, 1985, authorizing appellant to sign checks on the corporate account and designating her "office manager". No evidence was introduced that appellant was aware of the existence of these resolutions.

The record further indicates that appellant wrote occasional checks at Payne's direction, filled in from time to time for absent telemarketers and was generally the "girl Friday" around the office. On August 5, 1985, an incident (hereinafter the "incident") occurred in the office that allegedly changed the daily operations of All Pro. On this day, Payne became angry and shouted "I've had enough," slammed down his brief case and left the office. Appellant witnessed the incident. Apparently the brief case fell open and appellant discovered, among other things, official looking documents inside. She immediately contacted Littge who requested that she and the telemarketing manager and part-owner, Michael Kenagy, come to his office with the brief case. Appellant testified that while this was certainly the most significant such occurrence, Payne had become angry before and had made the same statement before.

Once in his office, Littge explained to appellant and Kenagy that the documents were unremitted federal payroll tax coupons and unfiled tax reports.[3] Questions as to whether and what instructions, if any, were given by Littge with respect to these documents and the payment priorities for future bills are in dispute. Littge then took appellant and Kenagy to the bank, removed Payne's signature from the *Littge & Associates client payroll account* and added their signatures. Littge later executed corporate resolutions dated August 5, 1985, authorizing appellant and Kenagy to sign payroll checks and to borrow money on behalf of the corporation. As before, no evidence was introduced to suggest that they were aware of these resolutions, and both denied knowledge of them.

Between August 5 and appellant's resignation near year end, she signed most of the corporate checks and her's was the second signature, in addition to Littge's, on all payroll checks.[4] She was also allegedly instructed by either Payne or Littge to remit two payroll tax payments, one in August and one in September, in the amounts of $2,060.84 and $1,482.51, respectively. Trial witnesses, including appellant, officers, employees and owners of All Pro, consistently and uniformly testified that after the incident Payne continued to control the business though he was often absent from the office. They stated they saw him in the office two or three times a week, that he called the office frequently, left instructional notes for employees, and wore a beeper so he could be reached if corporate or financial decisions needed to

---

3. Witness Yeo, a part owner and the vice-president of All Pro testified that Littge had informed him that Payne was behind on the taxes by $14,000.00—$15,000.00 and that the corporate tax fund had been depleted by personal expenditures of Payne.

4. The payroll account belonged to Littge & Associates. It served as a sort of clearing account for client payroll. Littge testified that the second signature in addition to his was a "dummy" and not a required signature, but that he had clients sign to assure client review of the payroll payees and amounts.

be made. Witnesses also testified that even after August 5, to their knowledge, appellant was not authorized to issue corporate checks without authorization by Payne or Littge, and that none of them had requested and received any checks not so approved.

According to Littge's testimony, however, he believed that appellant and Kenagy were taking charge of the business when Payne became "absent". Littge could not specifically recall the incident nor any statements he might have made to appellant and Kenagy after the incident, though he denied instructing them about any priorities regarding payment of his fees, taxes and other bills. Littge denied any active role in the business and denied attending owners' or managers' meetings. Littge could not recall dealing with Payne again until December when Payne became very active in the sale of All Pro, though he admitted some knowledge that Payne called into All Pro. Littge continued to maintain a separate office and was not at the All Pro office on a day-to-day basis between August and December.

The district court found that the case was a close one and that appellant had failed to present evidence sufficient to show that the government's position was not reasonable. The court specifically found that the government had introduced evidence showing appellant was a manager, had check signing authority, and had some bill paying discretion after the departure of Payne. The district court relied to some extent on the statements of the arbitration panel that the case was close (a split decision) and on its denial of attorney's fees.

APPLICABLE STANDARDS

A. Cost and Fee Awards

■ The parties agree that the applicable statutes are those that were in effect as of December 9, 1988, when appellant filed her suit for refund in the district court. This means that the 1988 amendments to code § 7430 that re-define the proceedings for which fees and costs may be awarded are applicable. Nothing in the amendments suggests that our standard of review or appellant's burden of proof was

changed, though appellant argues that congressional amendments were intended to harmonize § 7430 with the Equal Access to Justice Act (EAJA) provisions, 28 U.S.C. § 2412 (1985), placing the burden of proof on the government.

We disagree. The plain language of amended § 7430(c)(4) clearly places the burden of proof on the taxpayer, as in the past. *Keasler v. United States*, 766 F.2d 1227, 1236 (8th Cir.1985). We review the district court's findings of fact under a clearly erroneous standard, and we review its decision not to award fees and costs based on the facts under an abuse of discretion standard. *In re Arthur Andersen & Co.*, 832 F.2d 1057, 1060 (8th Cir.1987).

■ A taxpayer is eligible for an award of reasonable fees and costs incurred in certain administrative and court proceedings where s/he is the prevailing party and has exhausted all administrative remedies. I.R.C. § 7430(a)-(b). The fees and costs are limited to those incurred in proceedings beginning with the earlier of the date of receiving a final determination from the Internal Revenue Service Office of Appeals or a notice of deficiency, I.R.C. § 7430(c), and ending with the final determination by the appellate courts. *Commissioner, Immigration & Naturalization Servs. v. Jean*, — U.S. —, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Bode v. United States*, 919 F.2d 1044, 1052 (5th Cir.1990); *Powell v. Commissioner*, 891 F.2d 1167, 1169 (5th Cir.1990).

■ A prevailing party is one that: (1) proves that the position taken by the United States in the administrative and court proceedings was not substantially justified, (2) substantially prevails as to the amount or most significant issue in controversy, and (3) meets certain procedural requirements listed in 28 U.S.C. § 2412(d)(1)(B), sentence one. I.R.C. § 7430(c)(4). The district court concluded, and we agree, that taxpayer met the latter two of the three requirements.

■ The key issue in this case, therefore, is whether the district court properly concluded that appellant failed to prove

that the government's position was not substantially justified. The position of the United States is the legal and factual position asserted by it during the administrative and court proceedings, regardless of whether the position originated before or after the proceedings began. *Powell,* 891 F.2d at 1169, and *Powell v. Commissioner,* 791 F.2d 385, 391 (5th Cir.1986) (position taken prior to period for which fee award is available but carried over to fee award period is position of the United States for purposes of fee award).

The "not substantially justified" standard was copied by Congress from the EAJA provisions. Thus, where the wording is consistent, courts read the EAJA and § 7430 in harmony. *Arthur Andersen,* 832 F.2d at 1060; *Powell,* 791 F.2d at 391; *United States v. Balanced Fin. Management, Inc.,* 769 F.2d 1440, 1451 n. 12 (10th Cir.1985). Based on our EAJA decisions, the government's position is not substantially justified where it is unreasonable. *Arthur Andersen,* 832 F.2d at 1060. Stated another way, the government's position is not substantially justified where its position is not "clearly reasonable, well founded in law and fact, [or] solid though not necessarily correct." *United States v. Estridge,* 797 F.2d 1454, 1459 (8th Cir. 1986). The government's position may not be reasonable if it failed to adequately investigate its case or placed unwarranted reliance on biased witnesses. *Id.* at 1457–58. Whether the government's position is not substantially justified is necessarily a case-by-case, facts and circumstances determination. *Arthur Andersen,* 832 F.2d at 1060; *Keasler,* 766 F.2d at 1237 n. 22.

### B. Responsible Person

In the present case, the position of the United States that we must review is its position that appellant was a responsible person, subject to assessment, with respect to All Pro's payroll taxes during the second, third and fourth quarters of 1985. Section 6672 authorizes the Commissioner to impose a 100% penalty on any "person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof...." I.R.C. § 6672(a).

The statute has been interpreted as applying to responsible persons who fail to withhold or collect the tax, fail to account for and pay over the tax, or attempt to evade or defeat the tax or payment. *Slodov v. United States,* 436 U.S. 238, 247–48, 98 S.Ct. 1778, 1785–86, 56 L.Ed.2d 251 (1978) (the collection, accounting and payment authority need not all be present to be a responsible person); *Elmore v. United States,* 843 F.2d 1128, 1132 (8th Cir.1988) (statute interpreted).

Responsible persons are those who have the status, duty and authority to avoid the corporation's default in collection or payment of the taxes. *Godfrey v. United States,* 748 F.2d 1568, 1574 (Fed.Cir. 1984); *Howard v. United States,* 711 F.2d 729, 734 (5th Cir.1983); *Heimark v. United States,* 18 Cl.Ct. 15, 20 (1989). We have held that a responsible person must have significant, though not exclusive, authority in the area of corporate decision-making and matters related to federal tax payments. *Elmore,* 843 F.2d at 1132. The parties state, and we agree, that mere technical authority to sign checks is not enough to become a responsible person. *See Godfrey,* 748 F.2d at 1576; *Barrett v. United States,* 580 F.2d 449, 217 Ct.Cl. 617 (1978); I.R.M. ¶ 726, 5632.1(3). Broader authority with respect to significant tax matters is also required. *Kizzier v. United States,* 598 F.2d 1128, 1132 (8th Cir.1979).

We have also held that the responsible person is generally an officer or high level employee of the company, but need not be an employee at all. *See Jehan–Das, Inc. v. United States,* 925 F.2d 237 (8th Cir.1991) (president was responsible person with regard to payment of taxes during bankruptcy proceedings); *Donelan Phelps & Co. v. United States,* 876 F.2d 1373, 1376–77 (8th Cir.1989) (outside investment group a responsible person where it took control of company and willfully misapplied funds to debts owed other creditors); *Elmore,* 843

F.2d at 1130–32 (fifty per cent shareholder and vice president, with signature authority and the authority to sell assets, was responsible person to the extent of unencumbered funds after he took control, had knowledge of taxes due and failed to pay them); *Kizzier*, 598 F.2d at 1132 (president, treasurer and sole shareholder was responsible person to the extent of unencumbered funds); *Emshwiller v. United States*, 565 F.2d 1042 (8th Cir.1977) (turnaround manager with signature authority, appointed by bankruptcy court as co-chief executive, a responsible person); *Hartman v. United States*, 538 F.2d 1336 (8th Cir.1976) (president of corporation who was also an accountant a responsible person for corporate taxes).

■■■ A responsible person generally may not be penalized with respect to unpaid taxes accruing prior to the date s/he became a responsible person in an amount more than the unencumbered funds of the corporation in existence at that date. *Slodov*, 436 U.S. at 250–54, 98 S.Ct. at 1786–89; *Elmore*, 843 F.2d at 1133. Unencumbered funds are those funds available after taking into account outstanding transactions. *Elmore*, 843 F.2d at 1133. With these standards in mind, we turn to their application in the present case.

## ANALYSIS

In sum, the government's administrative and litigation position that appellant was a responsible person with respect to All Pro's payroll taxes was principally based on the following facts: (1) she had signature authority beginning in April, 1985, and was authorized to borrow money after August 5, 1985, (2) she signed most of the checks after August 5, 1985, (3) she remitted two federal tax payments after August 5, 1985, (4) she was a "manager," (5) some testimony suggested she may have had limited bill paying discretion, and (6) the dominant owner/officer was often physically absent from the business after August 5, 1985.

The district court considered appellant's motion for fees and costs broadly, not differentiating between the varying facts present at different times. However, a determination of whether the government's position is not substantially justified is highly fact sensitive. Since the government asserted its position with respect to three quarters where the facts were somewhat different, we will consider the question of whether its position was not substantially justified as to each distinct time period.

A. April 10—August 5, 1985

■■■ The facts relevant to the second quarter (April—June) and the first part of the third quarter (July—August 5) are essentially the same. During this time, the evidence indicates that appellant was an account signatory on the general corporate account (not the payroll account), functioned as the office secretary or "girl Friday," and had the "paper" title of office manager. The evidence conclusively showed that during this period she was not an officer, a director, or an owner, she did not attend owner or manager meetings, she could not hire or fire, sell or purchase assets, direct or withhold payments, or borrow on behalf of the corporation. She wrote few checks and then only at Payne's direction. Payne ran the business autocratically and controlled the finances. He took care of all tax matters.

Based on these facts, we believe appellant proved the government's responsible person position was not substantially justified. As courts and the parties have stated, signature authority alone is not enough. Appellant clearly did not have the status, duty or authority to make corporate decisions or handle corporate tax collection or payment matters during this time period. Technical signing authority is not the same as having the effective power to pay. *Howard*, 711 F.2d at 734. Interestingly, the record reflects that the government admitted at trial that its case with respect to the second and early third quarters was principally based on appellant's signatory status, thus reinforcing the unreasonableness of its position.

■■■ Despite the unreasonableness of the government's factual and legal position through August 5, it correctly argues alter-

natively that if appellant became a responsible person beginning August 5, she could still be assessed the responsible person penalty based on past due taxes to the extent of any unencumbered funds in existence at that date. *See Slodov*, 436 U.S. at 250, 98 S.Ct. at 1786; *Elmore*, 843 F.2d at 1131–33. Since we cannot conclude that the district court abused its discretion in denying fees and costs related to the government's position for the period after August 5, we must address the unencumbered funds issue.

Appellant testified that on August 5 the unencumbered balance in the corporate checking account, taking into account outstanding checks, was $3.00. The government was unable to locate the corporate check book in the records it seized and instead offered All Pro's bank statements as evidence of unencumbered funds. The government argued that a high balance of approximately $7,000.00 was in the account in late August. Appellant's trial counsel argued that the bank statements were unreliable evidence of unencumbered funds because they did not take into account outstanding checks. *See Elmore*, 843 F.2d at 1133. After much discussion between the bench and counsel, the court admitted the bank statement evidence but also agreed that cross-examination and affirmative testimony could be used both to persuade the jury of problems associated with relying on the bank statement balances and to suggest alternative unencumbered funds balances.

The government presented microfiche copies of the July, August, September, October and December bank statements for All Pro. The July statement showed an average daily balance of approximately $283.00. The testimony is somewhat unclear, but that month's ending balance was apparently just over $1,100.00. The August statement was difficult to read and neither counsel nor the court could decipher any of the daily balances early in the month. Later in the month, the daily balances fluctuated between the low thousands to more than $7,000.00. The August through December statements showed total net debits and credits of $1,000.00, plus or minus a few hundred dollars.[5] The government asserts that appellant's claimed balance is not believable in light of the statement balances. We disagree.

As stated, the average daily balance was only $283.00 during July and the total net transactions for the last five months of the year were about $1,000.00. The ending July balance was only a little over $1,100.00, and appellant testified the unencumbered balance was $3.00 on August 5. Given the bank statement balances nearest August 5, the probable existence of outstanding checks, appellant's testimony as to unencumbered funds, and the logical inferences drawn from the July average balance and the five month "net" of transactions, a reasonable fact finder would have likely concluded that the unencumbered funds on August 5, 1985, were something less than $1,100.00. *See Elmore*, 843 F.2d at 1133. Therefore, the government's position that most or all of the penalty could be reasonably assessed based on unencumbered funds existing at August 5, 1985, is unsupported by the evidence.

■ We, therefore, reverse and remand the § 7430 award determination as it relates to the share of the administrative and court proceeding costs and fees that might be reasonably allocated based on the positions held by the government during the second and early third quarters. The cost and fee award period should begin on or about April 22, 1988, when taxpayer was issued a final determination from the Office of Appeals on her assessment protest. Even though the government dropped its unreasonable position as to the second quarter just before trial, an award is available for the fees and costs incurred for so long as the position was maintained. The

---

5. The testimony indicated the following approximate debit and credit figures for each month:

| | | | | | |
|---|---|---|---|---|---|
| August | +$31,000 | −$25,000 | October | + 24,000 | − 25,000 |
| September | + 20,000 | − 24,000 | December | + 17,000 | − 17,000 |

NET: $1,000+/−

district court has jurisdiction over both the administrative and court proceeding awards for both quarters because a final determination as to the prevailing party was not made at the administrative level. I.R.C. § 7430(c)(2)(B), (4)(B).

**B.  August 5—December, 1985**

██  The government strongly urges that the situation at All Pro changed significantly after August 5.  In addition to being an account signatory and having the job title of office manager, appellant became an authorized signatory on Littge's client payroll account, was given corporate borrowing authority, signed substantially all the checks, and remitted two corporate payroll tax payments.  The testimony indicates that Payne was physically absent much of the time, and there is some dispute about whether he remained in control of the day-to-day activities during the period in question.  Littge testified he thought Kenagy and appellant were running things at All Pro after August 5.  The remainder of the testimonial evidence indicates that Payne still controlled things even when he was not in the office by calling in and leaving notes.

Looking solely at the physical evidence, we cannot say that the district court clearly erred in its fact findings or abused its discretion by denying attorney fees.  The "paper" evidence at least suggests that appellant had the status (office manager and check writer), authority (authorized signatory and borrower, actual bill payer), and duty (tax payment remitter) to avoid payroll tax payment default.  The circumstances support an inference that if Payne was not in control, she and Kenagy were.  The critical evidence is the testimonial evidence, and the district court was in a better position to judge the credibility of witnesses than are we.  If the court believed Littge to be credible and the other witnesses less credible, it would be entitled to weigh their testimony accordingly.

We believe the district court could have concluded that Littge's testimony, when coupled with the physical evidence, was enough to substantially justify the govern-

ment's position.  The district court was in the best position to evaluate the critical witness testimony, and in this case we are compelled to defer to its judgment.

**C.  Other Issues**

Appellant argues that the district court based its denial at least in part on the factual conclusions of the arbitration panel and that this reliance was unfair since the arbitration was nonbinding and involved less preparation and case presentation time.  The panel concluded the case was a close one and unanimously denied fees and costs.  The district court mentions the panel's decision, but the reference does not appear significant to decision.  The district court relied first and foremost on the trial witnesses and physical evidence.  Thus, appellant's argument is meritless.

██  Appellant also argues that the government's opposition to her motion for fees and costs was unreasonable and in bad faith, and is in and of itself a basis for awarding fees and costs.  We note that we are reversing only part of the district court's ruling, and having reviewed the government's opposition brief, we cannot say that the government's opposition was either unreasonable or in bad faith.  In its trial brief, motion brief, and appellate brief the government cites many old and now outdated cases, but there are not many modern circuit court opinions dealing with the issues in this case and older authority in many situations is all that is available.  The recent trial court opinions cited by appellant, while persuasive, are not binding authority.

██  The final issue arises with regard to the August and September tax payments.  The government is certainly entitled to apply payments to past due taxes first for purposes of its own internal accounting.  Based on our decision in *Elmore* and the Supreme Court's decision in *Slodov*, however, for purposes of the responsible person assessment, application of current tax payments to past due taxes is limited by the unencumbered funds rule.  To the extent current period tax payments are made after becoming a responsible per-

son that exceed unencumbered funds at the date of becoming a responsible person, the government should generally credit the responsible person for purposes of § 6672 with the excess payments before computing the assessment, regardless of how the payments are internally applied. To do otherwise would effectively circumvent the unencumbered funds rule. Such a position is not substantially justified as a matter of law.

Because this issue was not considered by the district court, we remand the issue of costs and fees after August 5, 1985, for the limited purpose of considering whether appellant was assessed a penalty without being granted proper credit for payments made after becoming a responsible person on August 5. If so, the district court may award reasonably allocable costs and fees.

CONCLUSION

The district court agreed with the arbitration panel that this case was close on the liability issue. We also agree the case was close, but on the substantial justification issue, not on liability. The physical evidence suggesting appellant was a responsible person was fairly modest, and the only testimony supporting that position was less than unequivocal. We are unable, however, to conclude that the district court abused its discretion in denying fees with regard to the government's position after August 5. We do remand the fee question for the period before that, however, and we remand the limited issue discussed as to the third quarter.

FRIEDMAN, Senior Circuit Judge, dissenting in part.

I would affirm the decision of the district court in its entirety.

The court's careful analysis of the record convincingly shows that the appellant was not a responsible person of All Pro between April 10 and August 5, 1985. The question in awarding attorney fees, however, is not whether the record shows that she was not such a person, but whether the government's contrary position was substantially justified.

The answer to that question necessarily turns upon what basis the government had for taking the position it did in the litigation. The court, however, seems to focus upon the facts that were developed at a hearing held after the government already had taken its position. Those facts related to the correctness of the government's position, not its reasonableness. To be sure, the reasonableness of the government's position depends upon what basis it had for taking the position, but the answer should not depend upon an objective analysis of the evidence relating to the merits.

In my view, the district court correctly ruled that the government's position that the appellant was a responsible person of All Pro during the entire period from April 10 to December was substantially justified.