Carole A. CARSTENS, Plaintiff,

v.

UNITED STATES of America,
and the Internal Revenue
Service, Defendants.

Civ. No. 3–94–950.

United States District Court,
D. Minnesota,
Third Division.

May 24, 1995.

Dennis L. Carstens, Carstens & Schmitz, P.A., Bloomington, MN, for plaintiff.

Tracy A. Martinez, Civ. Trial Section, Central Region, Tax Div., Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Before the Court in this tax refund case is the Plaintiff Carole A. Carstens' Motion for Summary Judgment, brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, Carstens seeks (1) a refund of $4,435.37 from the Defendants United States of America and Internal Revenue Service ("IRS"); (2) an injunction preventing the defendants from enforcing a tax lien which has been assessed against the plaintiff; (3) a declaration that Carstens is not liable under 26 U.S.C. § 6672 for the nonpayment of federal withholding taxes by her employer; and (4) the payment by the Defendants of her attorney's fees and costs. After the plaintiff's motion was filed, the parties agreed to settle their disputes concerning Carstens' liability under § 6672. Accordingly, the only issue remaining for the Court's resolution is the plaintiff's claim for attorney's fees under 26 U.S.C. § 7430. For the reasons set forth below, the Court will grant the Plaintiff's motion for attorney's fees.

## Background

### I. Factual History

This case arises out of the failure of a business, Mr. Gib's M & M Supper Club ("Supper Club"), doing business as "Bartylla's," to pay withheld federal taxes to the Internal Revenue Service. In the spring of 1981, Carstens was hired by the Supper Club to manage the restaurant, dining room and kitchen. It appears that the Supper Club commenced business as a "corporation" in late 1981 or on January 1, 1982. Form 4180 for Timothy P. Talbot; Form 4180 for Robert Altrichter (Pl.'s Exs.). The Supper Club had four owner/investors—Gilbert Bartylla, Jack Seidl, Robert Altrichter and Robert Olson—who served as officers and/or directors of the business. *Id.* In documents arising out of the IRS' investigation of the unpaid taxes, Carstens is described as the "bookkeeper;" she is never identified as a corporate officer or director.

The owners of the Supper Club had varying degrees involvement in the business. When Carstens began her employment, Bartylla worked at the Supper Club every morning and afternoon and most evenings. Seidl described himself as a "silent partner" and Altrichter represented to the IRS that he was an "investor only." Olson's role in the business is not clear from the record.

In 1981, the Supper Club hired the accounting firm of Sharp & Co., CPAs ("Sharp"), to set up a bookkeeping system for the business. Sharp trained Carstens to produce profit and loss statements and maintain the records for the business checking account and other financial ledgers. It also appears that Carstens paid withheld federal taxes and filed federal tax documents, including Form 941s, in 1982 and 1983.

In the fall of 1981, Bartylla began working outside the Supper Club, first at a part-time job and later at a full-time job. At that point, Carstens became a signatory on the business checking account. Carstens avers that, from the fall of 1981 until the summer of 1992, however, she did not have authority to sign checks on her own. (Carstens Aff., at 3–4.) Carstens further avers that Bartylla would come to the Supper Club each morning to review the bills and direct Carstens as to which creditors to pay. (*Id.*) Only in the summer of 1992 was she given independent check-signing authority. (*Id.* at 4.)

In mid–1982, the Supper Club experienced cash flow problems and was placed on a cash-on-delivery basis by its suppliers. At about this time, the profit and loss statements demonstrated that taxes for the Supper Club were not being paid. In the Spring of 1983, two of the owners invested additional funds in the Supper Club. The owners apparently used these funds to pay the employees' payroll and other creditors as opposed to paying the past-due federal taxes.

In June of 1983, Olson committed suicide. That same month, the Board of Directors for the Supper Club decided to remove Carstens' name from the bank signature card. In the late summer of 1983, Bartylla himself committed suicide. Altrichter, one of the two remaining owners, took over the running of the Supper Club. Carstens continued to work as the restaurant manager until November of 1983, at which time Altrichter fired her.

### II. Procedural History

Beginning in August of 1983 and continuing through March of 1985, the IRS investigated the failure of the Supper Club to pay federal withholding taxes for the last two quarters of 1982 and all of 1983. In the course of its investigation, the IRS interviewed Carstens, Bartylla, Altrichter, Seidl and Timothy Talbot, a CPA with Sharp. In 1985, the IRS assessed Carstens for the unpaid federal withholding for the third and fourth quarters of 1982, the first quarter of 1983, and that portion of the second quarter of 1983 during which Carstens had check-signing authority.

Carstens appealed the assessment through the IRS. On February 4, 1986, the IRS upheld the penalty assessment against her. Carstens subsequently filed Chapter 13 bankruptcy, through which she paid $4,435.37 to the IRS. On September 10, 1993, Carstens filed a Form 843 Claim for Abatement and Refund; the IRS denied her request on December 16, 1993.

Plaintiff filed this action on or about August 9, 1994 seeking a refund of the $4,435.37 she had previously paid to the IRS. The defendants answered and filed a counterclaim seeking to recover the remainder of the assessment plus accrued statutory additions, totalling approximately $31,694.26. Upon the filing of this claim, the administrative file was transferred to the Tax Division of the Justice Department.[1] After reviewing the file, the United States' attorney determined that it would be necessary to take the depositions of the plaintiff, Altrichter and Seidl; the depositions of Carstens and Altrichter were taken, however Seidl had died the previous year.

Following Altrichter's deposition, in which he testified that he had no first-hand knowledge concerning who ran the Supper Club during the relevant time period, the government concluded that Altrichter could not be relied upon as a witness in its case against Carstens. Accordingly, the government attorney informed plaintiff's counsel that it would abate the unpaid balance on the assessment and would refund to Carstens all of the money she had paid to the IRS plus interest, except for the sum of $1,796.24, which the government contends was paid prior to the limitations period for plaintiff's refund action. The only issue remaining on the plaintiff's motion, therefore, is whether she is entitled to a statutory award of costs under § 7430.

## Analysis

### I. Attorney's Fees under 26 U.S.C. § 7430

Section 7430 of Title 26 of the United States Code provides that, in an administrative or court proceeding "which is brought by or against the United States in connection with the determination, collection or refund of any tax, interest, or penalty" under the Internal Revenue Code, the prevailing party may be awarded a judgment for reasonable administrative or litigation costs incurred in connection with such a proceeding.[2] 26 U.S.C. § 7430(a). To be entitled to a statutory award under § 7430, a prevailing party must show that:

(1) to the extent she seeks to recover litigation costs, she has exhausted the administrative remedies available to her within the IRS;

(2) the costs for which an award is sought are allocable to the United States and not to some third party;

(3) any litigation costs were not, except in very limited circumstances, incurred in connection with a declaratory judgment proceeding; and

(4) she has not unreasonably protracted the administrative or court proceeding.

*Id.*, § 7430(b).

The United States does not contend that any of the limitations listed in § 7430(b) applies. Rather, the United States argues that Carstens is not entitled to costs because she was not a "prevailing party" under § 7430(a), as that term is defined in 26 U.S.C. § 7430(c)(4). The defendants further argue that Carstens' fee request should be denied because she has failed to provide any information related to the amount of the fees requested or the number of hours worked on this matter. The Court will construe the plaintiff's motion as requesting a ruling on whether she is entitled to an award of costs under the statute, leaving for another day a motion to fix the proper amount of such an award, if any.

---

**1.** It appears that the documents from the administrative file which have been provided to the Court are the Form 4180 records of investigative interviews (filed by the plaintiff in support of her motion), a March 7, 1985 Appeals Transmittal Memorandum (also submitted by the plaintiff), a document labelled "Attachment B" entitled "Reconsideration of the Involvement of Ms. Carstens in Mr Gibbs M & M Supper Club (handed up to the Court by Government counsel during the hearing), and the February 4, 1986 Appeals Transmittal Memorandum and Supporting Statement (also handed up by the Government's counsel).

**2.** "Reasonable litigation costs" are defined as court costs; the expenses of expert witnesses; the cost of any study, analysis, report, test or project which the court finds was necessary for the preparation of the prevailing party's case; and attorney's fees not to exceed $75 per hour unless the court determines an increase in the cost of living or a special factor justifies a higher rate.

"Reasonable administrative costs" are defined as the items set forth above and any administrative fees or similar charges imposed by the IRS.

### A. A "Substantially Justified" Position

To conclude that the plaintiff here is eligible for an award of attorney's fees under § 7430, the Court must find that she was the "prevailing party." A "prevailing party" must establish that (1) "the position of the United States in the proceeding was not substantially justified;" (2) she "substantially prevailed" as to the amount in controversy or the most significant issue(s) presented; and (3) she meets the net worth limitations of 28 U.S.C. § 2412(d)(1)(B). *See* 26 U.S.C. § 7430(c)(4)(A); *Kenagy v. United States,* 942 F.2d 459, 463 (8th Cir.1991). The "position of the United States" is the position taken by the United States in either a judicial proceeding or in an administrative proceeding as of the earlier of (1) the date the taxpayer received a notice of the decision of the Internal Revenue Service Office of Appeals, or (2) the date of the notice of deficiency. 26 U.S.C. § 7430(c)(7).

█ The standard for determining whether the Government's position was "substantially justified" for purposes of § 7430 is the same as that applied in claims for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *Kenagy,* 942 F.2d at 464; *see also Huffman v. Commissioner of Internal Revenue,* 978 F.2d 1139 (9th Cir.1992). Unlike the fees provision of the EAJA, however, the Code's fee provision places the burden of proof as to substantial justification upon the plaintiff, not the government. *Compare Kenagy,* 942 F.2d at 463 (8th Cir.1991) *with Sawyers v. Shalala,* 990 F.2d 1033, 1034 (8th Cir.1993). *But see Miller v. Alamo,* 983 F.2d 856, 859 (8th Cir.1993) (placing burden of proof on government to demonstrate that its position was substantially justified under § 7430 without discussing prior *Kenagy* holding). The government's litigation position is not "substantially justified" if it lacks a reasonable basis in law and fact. *Barton v. United States,* 988 F.2d 58, 59 (8th Cir.1993) (applying 26 U.S.C. § 7430); *accord, Sawyers,* 990 F.2d at 1034 (applying EAJA). For example, the government's position may not be reasonable if it failed to adequately investigate its case or placed unwarranted reliance on biased witnesses. *Kenagy,* 942 F.2d at 464.

The United States contends that, pursuant to the Code's definition of "position of the United States," the pertinent date in this case is February 4, 1986, the date the IRS mailed its appeals statement to Carstens. The United States thus frames the issue as whether, after approximately February 4, 1986, the United States' actions were "substantially justified." Although the plaintiff takes issue with this application of the definition, the Court finds no basis to depart from the plain language of the statute. Thus, the position held by the government from February 4, 1986 to the present is the "position of the United States" which the Court must evaluate.

█ The Court cannot assess that position in a vacuum, however. As the Fifth Circuit has recently held, to determine the reasonableness of the "position of the United States," the court must view that position in the context of the actions that preceded the taking of that position. *Lennox v. Commissioner of Internal Revenue,* 998 F.2d 244, 248 (5th Cir.1993) (reviewing reasonableness of position as of the date of notice of a deficiency in light of prior events that caused the government to take that position); *Hanson v. Commissioner of Internal Revenue,* 975 F.2d 1150, 1153 n. 2 (5th Cir.1992) (reviewing reasonableness of position taken in judicial proceeding "against the backdrop of the administrative actions that have gone before"). Thus, the Court will view the position taken by the Government after February 4, 1986, in light of the IRS' investigation made in this case prior to February 4, 1986.

█ The Eighth Circuit has summarized the operation of § 6672 of the Code as follows:

Section 6672 imposes liability for unpaid federal withholding taxes on corporate personnel who (1) have the corporate responsibility to collect, truthfully account for, and pay over the taxes; and (2) willfully fail to do so. A responsible person under § 6672 has the "status, duty and authority" to avoid the corporation's default in collection or payment of the taxes. To trigger § 6672 liability, a person must have significant decision-making authority over the

corporation's tax matters. A person's technical authority to sign checks and duty to prepare tax returns are not enough to make the person responsible under the statute.

*Barton,* 988 F.2d at 59 (internal citations omitted); *see also, e.g., Keller v. United States,* 46 F.3d 851, 854 (8th Cir.1995); *Jenson v. United States,* 23 F.3d 1393, 1394 (8th Cir.1994). In the instant case, it appears that the information before the United States prior to the appeals process demonstrated that Carstens had authority to sign checks and prepare tax returns. In response to the question on the IRS interview record—Form 4180—which asked who was "responsible" for filing Form 941s and paying withheld federal taxes, both Bartylla and Carstens stated that Carstens had that responsibility. There is a distinction, however, between performing ministerial functions and making decisions concerning the payment of creditors, such as the IRS. For example, the answers on the Form 4180s concerning the filing of tax forms and paying of taxes can be contrasted here with the answers to a question concerning which corporate personnel authorized or allowed other creditors to be paid while the corporation's tax liabilities were accruing.

In response to that latter question, only Jack Seidl stated that Carstens had authorized any such payments; Seidl specifically indicated that both Bartylla and Carstens had allowed payments to be made to other creditors. Seidl also informed the IRS, however, that "[o]ther than a couple of meetings, I did not have *any* involvement in the business. I was strictly an investor with no power to sign checks or to order any made out." Form 4180 for Jack Seidl (Pl.'s Exs.). The other persons associated with the Supper Club whom the IRS interviewed all indicated that Bartylla alone exercised the authority to make payments to creditors during the period of delinquency for which the government has attempted to make Carstens a responsible person. Indeed, Bartylla himself described his duties and responsibilities at the Supper Club as running "the corporation on a day-to-day basis;" Bartylla admitted that he alone was responsible for allowing other creditors to be paid ahead of the IRS while the tax liabilities were accruing.

The Court concludes that the plaintiff has carried her burden to show that the government's position in this litigation has not been "well-founded in law or fact" in light of the clear case law—most recently expressed in *Barton*—construing who is a responsible person under § 6672. Drawing upon the information gathered in the IRS's initial investigation, there was an inadequate factual foundation for the agency's position, which it maintained until after the filing of the instant motion, that Carstens had anything other than ministerial responsibilities vis-a-vis the corporation's tax liabilities. With the exception of Seidl's reference to Carstens, no one who was interviewed indicated that Carstens engaged in *any* corporate decision-making, let alone decision-making with respect to the collection or payment of federal taxes. The Court will grant plaintiff's motion for leave to seek attorney's fees.

### Conclusion

Based on the foregoing, and all the files, records and proceedings herein, **IT IS ORDERED** that

(1) Plaintiffs' Motion for Summary Judgment (Doc. No. 12) is **DENIED AS MOOT,** the Court having been advised on the record in open court that the parties have settled the merits of the Complaint and Counterclaim, aside from the issue of attorney's fees; and

(2) Plaintiff's Motion for Attorney's Fees (Doc. No. 12) is **GRANTED;** at the hearing on this motion, plaintiff's counsel submitted to the Court an affidavit documenting the fees and costs incurred in both the administrative and litigation phases of this matter. The United States shall file any responsive memorandum to the plaintiff's affidavit within seven (7) days of the date of this order.