In the Matter of Michael
S. EVANS, Debtor.

Michael S. EVANS, Plaintiff,

v.

UNITED STATES of America, DEPARTMENT OF TREASURY, INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. BK94–40576.
Adv. No. A94–4041.

United States Bankruptcy Court,
D. Nebraska.

Oct. 10, 1995.

Paul J. Peter, Lincoln, NE, for plaintiff.

Virginia Cronan Lowe, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., Susan L. Knight, U.S. Department of Justice, Lincoln, NE, for defendant.

Kathleen Laughlin, Chapter 13 Trustee, Omaha, NE.

Patricia Dugan, U.S. Trustee, Omaha, NE.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

Before this court is the Motion by Plaintiff Michael S. Evans for Rule 9011 Sanctions (Fil. # 31), and Application by Plaintiff Michael S. Evans for Compensation (Fil. # 32), Showing in Support of Section 7430 Fees and Rule 9011 Sanctions filed by Plaintiff, Michael S. Evans (Fil. # 33). I assess costs and expenses against the Internal Revenue Service under section 7430 of the Internal Revenue Code.

## PROCEDURAL BACKGROUND

Plaintiff, Michael S. Evans, a Chapter 13 debtor, filed a Complaint for Determination of Tax Liability. Debtor challenges the validity of the Government's assessment of federal tax trust fund liability against him as a "responsible person," of National Direct Response Printing, Inc. ("the Corporation"). The adversary complaint was tried before this court on May 8, 1995. I ruled that Plaintiff's status, duties, and authority respecting use of corporate funds and payment of taxes was solely ministerial in nature, warranting a finding that debtor is not a "responsible person" for purposes of liability under section 6672 of the Internal Revenue Code.

The court specifically found that Plaintiff had no significant authority over disbursement of the Corporation's funds; that Plaintiff did perform the ministerial task of signing checks but that he had no significant discretion with respect to the preparation of the checks, or the designation of what payments were to be made by the Corporation. Further, the plaintiff did not participate in any significant way in the Corporation's decisions about payments to creditors, nor in decisions concerning which creditors would be paid and when. The final decisions regarding payments made by the Corporation were simply not his to make. I also concluded that, assuming arguendo that Mr. Evans did assume a significant role in the company affairs, he did not act willfully in failing to make the required tax payments, in the statutory sense of that term. Accordingly, judgment was entered for Plaintiff and against the IRS (Fil. # 30).

After the court's ruling, Plaintiff filed motions under Federal Bankruptcy Rule 9011 and I.R.C. § 7430 seeking an award of fees and expenses of $25,239.57 incurred as a result of the IRS' wrongful assessment of personal liability against Mr. Evans as a responsible person for the Corporation.

## LAW

The relevant provisions of the Internal Revenue Code state as follows:

§ 7430. **Awarding of costs and certain fees**

(a) **In general.**—In any ... court proceeding which is brought by or against the United States in connection with the determination, collection, or of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for—

(1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and

(2) reasonable litigation costs incurred in connection with such court proceeding.

**(b) Limitations.—**

**(1) Requirement that administrative remedies be exhausted.**—A judgment for reasonable litigation costs shall not be awarded under subsection (a) in any court proceeding unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service.

**(2) Only costs allocable to the United States.**—An award under subsection (a) shall be made only for reasonable litigation and administrative costs which are allocable to the United States and not to any other party.

\*   \*   \*   \*   \*   \*

**(c) Definitions.**—For purposes of this section—

**(1) Reasonable litigation costs.**—The term "reasonable litigation costs" includes—

(A) reasonable court costs, and

(B) based upon prevailing market rates for the kind or quality of services furnished—

\*   \*   \*   \*   \*   \*

(iii) reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate.

\*   \*   \*   \*   \*   \*

**(4) Prevailing party.**—

**(A) In general.**—The term "prevailing party" means any party in any proceeding to which subsection (a) applies ...

(i) which establishes that the position of the United States in the proceeding was not substantially justified,

(ii) which—

(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented....

\*   \*   \*   \*   \*   \*

**(B) Determination as to prevailing party.**—Any determination under subparagraph (a) as to whether a party is a prevailing party shall be made by agreement of the parties or-

\*   \*   \*   \*   \*   \*

(ii) in the case where such final determination is made by a court, the court.

26 U.S.C. § 7430.

Section 6672(a) provides:

**(a) General Rule.**—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

### DISCUSSION

As stated above, I ruled that plaintiff was not a "controlling person" for purposes of I.R.C. § 6672. As a result of the court's ruling, Plaintiff seeks assessment of litigation expenses under I.R.C. § 7430 and sanctions against the Government under Bankruptcy Rule 9011.

In an action before the bankruptcy court against the IRS, the prevailing party may be awarded a judgment for reasonable litigation costs incurred in connection with the proceeding. I.R.C. § 7430. *See also, In re Abernathy*, 150 B.R. 688 (Bankr.N.D.Ill. 1993). The award of fees to the prevailing party is discretionary with the awarding court. See *In re Rasbury*, 24 F.3d 159 (11th Cir.1994) ("may" indicates discretionary standard). The court has jurisdiction over both the administrative and court proceeding awards under section 7430(c)(2)(B), and

(4)(B), because a final determination as to the prevailing party was not made at the administrative level. See *Kenagy v. United States,* 942 F.2d 459, 467 (8th Cir.1991); *In re Germaine,* 152 B.R. 619 (9th Cir. BAP 1993); *U.S. v. Kolb,* 161 B.R. 30 (N.D.Ill.1993). Although a minority has held to the contrary, a majority of courts hold that a bankruptcy court has jurisdiction to award section 7430 costs against the United States. *See In re Grewe,* 4 F.3d 299 (4th Cir.1993); *In re Germaine,* 152 B.R. 619 (9th Cir. BAP 1993); *O'Connor v. United States,* 942 F.2d 771 (10th Cir.1991); *In re Abernathy,* 150 B.R. 688 (Bankr.N.D.Ill.1993); *In re Brooks,* 175 B.R. 409 (Bankr.S.D.Ala.1994), *contra, In re Brickell Inv.,* 922 F.2d 696 (11th Cir.1991). I conclude that a bankruptcy court may award litigation costs to a prevailing party under section 7430.

■ In order to award litigation costs, the court must find that the taxpayer qualifies as a "prevailing party" as defined by I.R.C. § 7430(c)(4). The definition of "prevailing party" under section 7430(c)(4)(A) has two prongs. First, the taxpayer must establish "that the position of the United States in the proceeding was not substantially justified," and second, the party must have "substantially prevailed with respect to the amount in controversy", or have "substantially prevailed with respect to the most significant issue or set of issues presented." Section 7430(c)(4)(A). Plaintiff has satisfied the second prong, having prevailed with regard to the issues previously tried in this adversary proceeding. A careful review of the applicable legal standards and facts of the case is necessary to determine whether the position of the IRS was substantially justified in this case.

■ The government's position is not substantially justified where it is unreasonable. See *Kenagy v. United States, supra,* at 464. The *Kenagy* court states that "the government's position is not substantially justified where its position is not 'clearly reasonable, well founded in law and fact, [or] solid though not necessarily correct.'" *Id.* (citing *United States v. Estridge,* 797 F.2d 1454 (8th Cir.1986)). For example, the Government's position may not be reasonable if it failed to adequately investigate its case or placed unwarranted reliance on biased witnesses. *Id.* Whether the Government's position is not substantially justified necessarily depends upon the facts and circumstances of the case. *Id.*

The IRS assessed the tax liability in this case under I.R.C. § 6672, as a result of its determination that Mr. Evans was responsible for payment of the taxes of his employer Corporation. The standard for assessment as a responsible person is set forth in I.R.C. § 6672. Section 6672(a) provides for a 100 percent penalty to:

> any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or payment thereof.

■ In order for liability to attach under section 6672, the individual must be a person required to collect, truthfully account for, and pay over federal employment taxes to the United States. *Olsen v. United States,* 952 F.2d 236, 238 (8th Cir.1991). Although the statute is phrased in the conjunctive, it is not necessary that a person be responsible for all these duties in order to be assessed and held liable for federal employment taxes. *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). There is no evidence from which I would conclude that the Plaintiff Michael Evans was a responsible person. The IRS argued for a finding that Mr. Evans was a controlling person based upon the fact that he had authority to sign checks, hire and fire personnel, and manage production on behalf of the Corporation. The IRS also asserted that the fact that Mr. Evans signed three Quarterly Federal Tax Returns (Exhibit Nos. 104–106) and a letter to the IRS concerning the Corporation's tax liability (Exhibit No. 103) indicates that Mr. Evans was a controlling person. However, these facts do not create a presumption that debtor is a controlling person. These facts are, at most, indicia which evidence requisite control and responsibility. The case law is quite clear that mere technical authority to sign checks is not

enough in itself to become a responsible person. See, *e.g., Kenagy, supra,* at 464; *Montana, Jr. v. United States;* 37 A.F.T.R.2d 76–412 (D.Neb.1975) (holding that the fact that taxpayer was authorized to sign company checks is not sufficient in and of itself to justify assessment under I.R.C. § 6672). The IRS has the duty to examine the facts and circumstances of Mr. Evans's role in the Corporation in detail.

If the IRS had given more than superficial examination to the facts and circumstances of this case, in light of decisional law, it should not have assessed Plaintiff with the tax liability. Mr. Evans was not and has never been an officer, director, or shareholder of the Corporation. Mr. Evans's job at the Corporation as general manager involved oversight of production. He was not involved in company finances except to perform ministerial tasks as a convenience for, and at the direction of, an absent owner. Mr. Evans had no significant control over corporate financial decision-making, particularly as it pertained to tax matters. Indeed, Mr. Evans did not have any significant knowledge about the financial condition or affairs of the Corporation. All financial decisions were made by Gary Michael and Stan Stahl. Mr. Michael was the president of the Corporation, and I conclude he was in fact the person responsible for nearly all of the Corporation's decisions. Stan Stahl was chief financial officer for a period of time during which the tax delinquencies accrued, until he resigned from the position as financial officer of Corporation. Gary Michael later terminated Stahl upon discovery of an embezzlement and Stahl's failure to file withholding returns. Mr. Evans's title as general manager and duties overseeing production for the Corporation constituted, at best, only circumstantial evidence that he was a "controlling person." Substantial evidence existed to the contrary, of which the IRS had notice and could have confirmed with reasonable investigation of the facts and circumstances surrounding this case.

The circumstances in this case are similar to those of *Barton v. United States,* 988 F.2d 58 (8th Cir.1993), where, as in the instant case, the Government placed unwarranted reliance on the title of the plaintiff's position, and plaintiff's limited management and supervisory powers. "As the case law makes clear, the Government could not reasonably rely on this kind of evidence in the face of uncontradicted evidence that [Plaintiff] had no authority over tax matters." *Barton,* 988 F.2d at 60. As in the *Barton* case, notice and evidence was available to the Government from which it could have ascertained the unreasonableness of its position in this case. *Id.* Here, as in the *Barton* case, the Government also contends that its position was substantially justified because Plaintiff knew or should have known the Corporation was late in paying withheld payroll taxes, but allowed his signature to remain on corporate checks. The *Barton* court disagreed with this theory of liability. *Id.* Knowledge that taxes are unpaid is only relevant to the issue of willfulness once a person is found responsible. *Id.* Without evidence that Mr. Evans had the authority to pay the taxes, his knowledge is irrelevant. *Id.* The IRS was formally aware as early as February 6, 1992, that Mr. Evans had no authority to disburse funds on behalf of the Corporation and did not participate in decisions regarding the payment of taxes. The obligation to collect, report, and pay trust fund taxes was clearly beyond the scope of Mr. Evans's duties with the Corporation. Mr. Evans did sign three Quarterly Federal Tax Returns of the Corporation and he did sign a letter to the IRS concerning the corporation tax liability. (Exhibit Nos. 103–106). However, Mr. Evans signed this letter and the tax returns only after an embezzlement was discovered. This letter merely encloses the returns and explains the reason for the late filing. Evans signed the letter as "Operations Manager." (Exhibit No. 103). Mr. Evans's signatures on the letter and returns constitute purely ministerial acts for the convenience of the absentee owner, Mr. Gary Michael. There is no evidence from which I would conclude that the acts of Mr. Evans in signing this letter and tax returns were anything other than ministerial. I conclude that the IRS's continued reliance on Mr. Evans's title and duties for the Corporation, and his signature on the three quarterly tax returns and the letter as circumstantial evidence that he was

a "controlling person," in light of uncontradicted evidence to the contrary, was unreasonable.

Long before the IRS assessed the tax liability against Mr. Evans on March 10, 1993, the IRS had notice of the uncontroverted facts indicating Gary Michael and Stan Stahl were responsible for the Corporation's finances, and that Mr. Evans's participation in financial transactions for the Corporation was ministerial in nature. The Government had notice of Mr. Evans's limited role in the financial matters of the Corporation since the inception of its investigation regarding the delinquent taxes. A June 5, 1990, letter by the Corporation's counsel to the IRS specifically attributes the Corporation's failure to file returns and pay taxes to the criminal activity of Stan Stahl, stating that Mr. Stahl was the financial officer of the corporation during the time most the taxes were incurred. (Exhibit No. 138). The letter states Gary Michael terminated Stanley Stahl as soon as he learned of Stahl's embezzlement activities. This is the initial evidence in the record that the IRS was aware that Stan Stahl and Gary Michael controlled the Corporation's finances.

The Government interviewed Plaintiff Michael Evans on December 13, 1991, relative to its subsequent recommendation of a 100 percent penalty assessment (Exhibit No. 101). At the interview, Mr. Evans admitted that his official capacity was that of general manager, having duties which included "all aspects of the business production, hire, fire, kept machines running" (Questions 3–4 on Exhibit No. 101). Mr. Evans named Stan Stahl as "in charge of financial matters" and as the person who maintained the financial books and records (Questions 8 and 19). Mr. Evans admitted no knowledge of the location of the minute books, payroll records, canceled checks, or any books or records, the source of funds for payroll, nor the location of assets of the Corporation. Mr. Evans states he had no knowledge of the fact that the taxes were not being paid (Question 28) until "June or July of '89" (Question 24), after the Corporation discovered embezzlement of corporate funds by its bookkeeper, Stan Stahl. Mr. Evans did admit his presence at a meeting with the police and Gary Michael concerning the nonpayment of taxes, relative to the police investigation concerning embezzlement by Stan Stahl (Question 15). However, Mr. Evans informed the IRS agent that Gary Michael made the "final decisions" concerning nonpayment of tax liabilities (Question 15). Therefore, the only evidence from Mr. Evans's interview from which the IRS could conclude he had the powers necessary to be a controlling person was his role as signatory on the corporate checks and his presence at a meeting with police concerning the nonpayment of taxes.

The Government had formal notice of the facts and circumstances of this case by the February 6, 1992, letter to the IRS by Mr. Peter, counsel for Mr. Evans (Exhibit No. 1). This sworn and verified letter was sent in a timely response to the Government's January 8, 1992, notice of proposed assessment of penalty against Mr. Evans (Exhibit No. 113). Mr. Peter's letter specifically detailed the facts regarding Mr. Evans's role in the company, and the circumstances surrounding the delinquency of the taxes, namely, the embezzlement of corporate funds by Stan Stahl. Mr. Peter specifically states that Mr. Michael was the principal and responsible person in charge, overseeing all facets of the business. The letter explains that Mr. Evans was hired to work in the sales department of the corporation and states: "His principal role was to see that the printing business came in the front door, was completed, and timely delivered to the customer," and that "no significant management duties were given to Mr. Evans," instead, "Gary Michael was the principal person in charge and was responsible for overseeing all facets of the business." This letter was verified before a notary and sent to the IRS by certified mail. I conclude that the facts as stated in the February 6, 1992, letter to the IRS were true and correct. The nature of the letter, its specificity and the fact that it was sworn and verified, should have at least put the Government on notice that further investigation of the facts was warranted prior to issuing an assessment against Mr. Evans. Instead, the IRS issued a formal assessment of the 100% penalty against Michael Evans on March 10, 1993.

In his July 27, 1993, letter, Mr. Evans's counsel, Paul Peter, again urged the Government to reconsider the assessment against Mr. Evans, in light of the fact that Mr. Evans constituted "a non-owner employee of the business who performed ministerial acts without exercising independent judgment." (Exhibit No. 48). In this letter Mr. Peter states that he firmly believed that Mr. Evans is not a responsible person.

Mr. Evans continued to maintain his position, submitting further documentation and evidence regarding his limited responsibilities for the Corporation, as he patiently exhausted IRS administrative remedies. On December 16, 1993, Evans submitted a check for $100 to the IRS, in order to have his case reconsidered as a "Claim for Refund and Request for Abatement" (Exhibit No. 49). Along with the Claim for Refund and Request for Abatement form, Evans submitted his sworn statement (Exhibit No. 49) and the affidavit of Larry Sovereign (Exhibit No. 46), both of which were consistent with Plaintiff's initial and constant representation of the facts in this case that Plaintiff never exercised independent judgment pertaining to the operation of the Corporation's finances or payment of bills, and only performed the ministerial acts of signing certain checks as the specific direction of Stan Stahl and Gary Michael as a convenience for Gary Michael.

The Affidavit of Larry Sovereign provided the IRS further uncontradicted evidence that Mr. Evans was not a controlling person. Mr. Sovereign was a salesman for the Corporation, and worked closely with Plaintiff. Mr. Sovereign states that Plaintiff was never presented with an opportunity to make a decision as to which liability should or should not be paid (Par. # 6), and that the prepared checks were presented to Michael Evans simply for his signature (Par. # 5). Mr. Sovereign states that he is familiar with the "responsible person" concept for federal tax trust fund penalty recovery purposes, having had experience with the penalty in connection with his ownership of a prior business venture. He states that it was his opinion, in light of the relevant facts and legal standards, that Plaintiff did not exercise the control or duties necessary to make him a re-

sponsible person. Mr. Sovereign testified at trial and generally reiterated the facts stated in his affidavit. Mr. Sovereign clearly suggested that Mr. Evans, although a very competent production manager, would have had an inability to deal with the Corporation's tax matters because of his lack of knowledge, background and experience in tax matters.

The Government was also urged to reconsider its position in Mr. Peter's December 16, 1993, letter to the IRS which accompanied the Claim for Refund and Request for Abatement. (Exhibit No. 49). Mr. Peter declares in his letter that, after looking at the matter objectively and not merely as Mr. Evans's advocate, that he is convinced that Mr. Evans "was wrongfully assessed this particular liability." Further, Mr. Peter informs the IRS that, if Plaintiff is forced to litigate the assessment, he would seek an award for attorney fees.

Despite the representations made in the sworn affidavit of Mr. Sovereign, an independent witness aware of both the legal standard and relevant facts and who worked closely with Plaintiff, and the repeated and consistent representations of Plaintiff and his counsel, and notice of the intent to seek attorneys fees in any successful litigation, the Government chose to deny the request for refund and abatement after just a few days. (Exhibit No. 50). Unquestionably at this point, the denial of the abatement on December 20, 1993, the Government's position no longer appears to be substantially justified, given the weight of the evidence submitted by Plaintiff and his counsel. The Government's refusal to even reconsider its position, in light of the evidence submitted, and despite notice of Plaintiff's intent to litigate the matter and seek attorney's fees, was unreasonable.

Not only did the IRS wrongfully and unreasonably assess Mr. Evans with liability, the IRS failed to assess liability against the two persons, Gary Michael and Stan Stahl, who appear to clearly have been the controlling persons. Further, once Mr. Michael had been released, and IRS became aware of facts which indicated that Mr. Michael and Stan Stahl were in fact the controlling persons of the Corporation, it continued to pur-

sue Mr. Evans. Not only did the IRS pursue Mr. Evans to the exclusion of the others, it failed to pursue even the Corporation itself. The IRS failed to timely file a proof of claim in the Corporation's bankruptcy for the tax obligation. The debtor then incurred further legal fees to ensure that an IRS proof of claim was filed and approved after the deadline for claims in the Corporation case. As a result of the Government's actions, Mr. Evans was forced to personally seek the protection of the bankruptcy court and initiate this adversary proceeding.

I conclude that the action of the Government, in resisting this litigation, and steadfastly adhering to its position that the plaintiff was a responsible person in the face of overwhelming, uncontradicted evidence to the contrary, was unreasonable. Therefore, I conclude that plaintiff constitutes a prevailing party under I.R.C. § 7430(c)(4), and that an award of reasonable litigation costs under section 7430 is warranted.

Rule 9011 sanctions will not be assessed in light of my ruling assessing fees and expenses under section 7430.

### *AMOUNT*

■■■ The Application for Compensation and Motion for Sanctions was heard by this court on July 3, 1995. At that hearing the parties agreed that, if litigation costs were awarded under I.R.C. § 7430, the award would be limited to the reasonable litigation costs incurred after March 10, 1993, the date of the notice of assessment. See I.R.C. § 7430(c). In addition to expenses related to the administrative proceeding and litigating the adversary proceeding, Mr. Peter is seeking the costs related to his services in Plaintiff's and the Corporation's bankruptcy proceedings which he claims were related to the trust fund taxes. Plaintiff has filed a detailed application of the fees and expenses sought and the Government has filed specific objections to the fees and expenses requested.

In reviewing the application, the court will adhere to the guidelines adopted by the Eighth Circuit in *Miller v. Alamo,* 983 F.2d 856 (8th Cir.1993). However, the fee application lacks sufficient details and I am unable to determine the amount of fees to be allowed. It is my preliminary conclusion that many of the objections of the IRS to the allowance of particular fees have some merit. However, I can not rule on the amount of fees to be allowed until after counsel for Mr. Evans have had an opportunity to file a supplemental application which sets forth with particularity:

1.  *Corporate Bankruptcy Related Fees and Expenses:*

    Plaintiff is directed to identify the particular **expenses** and **services** performed by its attorneys and paralegals which related solely to the Corporation's bankruptcy proceeding, # BK89–41316, and to state the total amount of compensation and expenses sought for such expenses.

2.  *Paralegals and Investigators:*

    Plaintiff is directed to describe the particular tasks performed by the paralegal and paralegal investigator, stating as to each task whether the tasks performed would otherwise have been performed by an attorney.

In preparing its supplemental application, Plaintiff's counsel may submit a duplicate copy of its application, and indicate on the copy the fees and expenses (by highlighter or other marking) those entries which pertain to the categories listed above.

IT IS THEREFORE ORDERED, that the motion to assess fees and costs against the IRS is sustained and a separate, final judgment shall be entered contemporaneously herewith.

IT IS FURTHER ORDERED, that the court takes under advisement the question as to the amount to be awarded. Counsel for Mr. Evans shall file a supplemental fee application and serve it upon the IRS within twenty-one (21) days hereof. The IRS may file a response within fourteen (14) days thereafter. Further oral arguments will not be scheduled, unless requested.